**FILED**

**FEB 1 2 2008**

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
JUDICIAL DISTRICT OF COLUMBIA

GUSTAVO LUNA #09054051
F.C.I. OAKDALE
Box 5000
OAKDALE, Petitioner,
LA· 71463

vs.

ALBERTO GONZALES, ATTORNEY
GENERAL FOR THE UNITED STATES
OF AMERICA,

and

HARLEY G. LAPPIN, DIRECTOR OF
THE BUREAU OF PRISONS,

Respondants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 09054051

RE: No. 07-03127-CV-S-RED

APPLICATION FOR
WRIT OF HABEAS CORPUS

BROUGHT IN THE NATURE OF
COMMON LAW WRIT OF
HABEAS CORPUS

Case: 1:08-cv-00235
Assigned To : Roberts, Richard W.
Assign. Date : 2/12/2008
Description: Habeas Corpus/2255

**NOW COMES,   GUSTAVO LUNA**          , Petitioner, in want of counsel,
*in the* above styled action, (hereinafter "Petitioner"), and as for a
Verified Petition For Writ of Habeas Corpus, shows the court as fol-
lows:

1.

That the relief sought herein is provided under the Law of Habeas
Corpus, in Coomon Law, the Constitution and Stattues of the United
States of America, and the Federal Civil Court Rules and Procedures.
(see, attached Memorandum of Law with Incorporated Points and Auth-
orities).

2.

That the Petitioner is presently imprisoned and restrained of his
liberty in violation of the rights thereof as set forth and guaranteed
in the Constitution of the United States and Federal Laws made in
conformance therewith.

///// - 1  APPLICATION FOR COMMON LAW WRIT OF HABEAS CORPUS

3.

That, Petitioner, herein is incarcerated in a Federal Correctional institution, in violation of the Constitutional rights of the Petitioner herein, as set forth without restriction, in Article V, VI, VIII and XIV in Amendment of the Constitution of the United States, as amended AD 1791.

4.

That the said incarceration of Petitioner herein, was ordered by a United States District Court Judge, a copy of the Order of Charging Document/Indictment and Order of Judgment and Sentnece in such case is attached herein as Exhibit "A", to establish that the respondants named above in the caption area, is the proper parties to the instant case.

5.

That this Court has personal jurisdiction over the respondant(s) named in the caption area above in the nature of 28 U.S.C. Sec. 88; 49 Stat. 1921, June 25, 1936, and the 80th Congressional House Report No. 308, it is shown that the District of the United States for the District of Columbia, is a Constitutional Court, rather than a legis-lative-Territorial Court, and therefore is duly empowered under the Constitution to the United States of America, as amended anno Domini 1791, and by way of an Act of Congress, to entertain the instant cause at bar, whereby the Petitioner invokes this Court's original juris-diction.

6.

That defense counsel rendered ineffective assistance where counsel failed ab initio to raise or challenge any of the issues raised herein.

7.

That the government in want of Legislative-Territorail or Admiralty Jurisdiction over the locus in quo.

8.

That the government in want of Federal Subject Matter Jurisdiction by failing to charge or prove that the alleged prohibitive act trans-cended the borders of the sovereign state in violation of the Federal interstate Commerce Clause.


///// - 2  APPLICATION FOR COMMON LAW WRIT OF HABEAS CORPUS

That there is no amendment to the Federal Constitution ratified by three-forths of the sovereign state to provide for nationwide jurisdiction and application of the Federal Statutory Provisions under which the Petitioner is charged.

10.

That the Federal Statutory Provisions under which the Petitioner is charged are unenacted by Congress, have not been promulgated in the Federal Register or possessed implementing authorities in the Code of Federal Regualtions, thus do not apply over private citizens.

11.

That to construe or to convert the instant non-authority Common Law Writ Of Habeas Corpus into a statutory pleading will be taken as denial of the pleading as submitted, thus, the sustainment of the unlawful incarceration of the Petitioner herein, causing injury and in the nature of 42 U.S.C. §1331, 1983, 1985, and 1986.

12.

That the court is presumed to possess superior knowledge of law, thus the court could be deemed to know from the facts and the law presented and the proceeding before the court record, that the Petitioner herein is in violation of his Constitutional Rights where the court is compelled to provide a Remedy-in-law for relief from such unlawful custody.

WHEREFORE, in the nature of §2241 and §2243 of Title 28 of the United States Code (June 25, 1948 c. 646, 62 Stat. 965), the Petitioner herein requests the court to prepare and issue an Order directing the Respondant(s) to Show Cause within 3 days, from the date of service, why the instant Common Law Writ of Habeas Corpus, should not be GRANTED, where all issues presented are only questions of law. The Respondant(s) will not be under burden to produce records, evidence, witnesses, or prepare for a hearing, and no additional time would be required.

the nature of the principle pronounced in 1 Stat. 122, May 26, 1970, Sec. 2 March 27, 1904, Stat. 298, Sec. 2 Petitioner executes the foregoing.

Date: February 4, 2008.

Respectfully submitted:

/////  - 3

UNITED STATES DISTRICT COURT
JUDICIAL DISTRICT OF COLUMBIA

GUSTAVO Luna,

      Petitioner/Plaintiff,

vs.

ALBERTO GONZALES, ATTORNEY GENERAL
FOR THE "UNITED STATES OF AMERICA,"

and

HARLEY G. LAPPIN, DIRECTOR OF
THE BUREAU OF PRISONS,

      Respondnet(s)/Defendant(s).
_____/

No. _09054051_____

VERIFIED PETITION
Ref: 05-03107-02-CR-S-RED

CAUSE
PURSUANT TO ARTICLE:
I §9 cl. 2

Title 28 U.S.C. §1651
ALL WRITS ACT

PETITIONER'S HABEAS CORPUS PETITION PURSUANT TO THE ORIGINAL
HABEAS CORPUS, AND REQUEST FOR DISMISSAL OF INDICTMENT AND
CONVICTION AND REQUEST FOR DECLARATORY JUDGMENT

AFFIDAVIT OF GUSTAVO LUNE:

COMES NOW, Gustavo Luna, pro-se, hereby invokes this court's
original jurisdiction, and files this habeas corpus petition pursuant to
Article I §9 cl.2 of the Constitution of the United States of America,
and in the nature of 28 U.S.C. §1651, seeking immediate relief from
his unlawful contraint which is in violation of the Constitution and
the laws of the United States. **As established herein, by judicial
noticed facts and law, no set of facts exist which make Public Law
80-772 and 80-773 constitutional. If the government can prove the
facts that make either one of statute lawful, P.L. 80-772 or 80-773,
then they need to bring forward the facts immediately, or the court
should declare the statutes unlawful and order the statutes unconsti-
tutional, illegal and null and void, ab initio.**

The court is requested to make specific findings of fact and law,
related to the issues presented, herein. Therefore, Petitioner has
the right to bring this petition pursuant to the original habeas corpus
because Public Law 80-773 and, a fortiori, 28 USC §2241 (1948) and
28 USC §2255 (1948) are nullities, were never enacted into positive
law, are unconstitutional, and are null and void ab initio. Position

08 0235    **FILED**

FEB 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

regarding the definition of sine die adjournments of Congress support's Petitioner/Plaintiff's argument and **estoppes** the government from arguing otherwise.

Furthermore, Public Law 80-772 and 18 USC § 3231 likewise were never enacted into positive law, are unconstitutional on their face, and null and void ab initio, meaning that the court has no jurisdiction over Petitioner/Plaintiff and his conviction is **null and void** ab initio, from the beginning.

Since the petitioner/Plaintiff can bring this petition pursuant to the original habeas corpus, and since it challenges the court's very jurisdiction to indict and convict defendant, then **no procedural hurdle exists and no time bar exists.** Since Petitioner/Plaintiff's claims are jurisdictional, no valid plea or waiver, jury verdict, or sentencing exists as a matter of law. Therefore, Petitioner/Plaintiff has a Due Process right to raise these claims and a Due Process right to be released from his unlawful constraints. Jurisdiction is a threshold issue and may be raised at any time. [1]

Also, since petitioner/Plaintiff presents this as a habeas petition, and since counsel has utterly failed to research the facts and law of the court's jurisdiction to prosecute Petitioner/Plaintiff, Petitioner/Plaintiff's Sixth Amendment rights have been violated, because Petitioner/Plaintiff's counsel is

---

[1] **United States v. Cotton, 535 U.S. 625, 630, 2002 Lexis 3565** (2002)(the term "jurisdiction" means the court's statutory or constitutional power to adjudicate the case. This concept of subject matter jurisdiction, because it involves a court's power to hear a case, can **never be forfeited or waived.** Consequently, defects in subject matter jurisdiction require correction regardless of whether the error was raised in district court); **United States v. Peter, 310 F.3d 709, 712 (11th. Cir.2002)**(jurisdictional error has historically been recognized as fundamental, and for which collateral relief has accordingly been available. Habeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction. Since jurisdictional error implicates a court's power to adjudicate the matter before it, such error can never be waived by parties to litigation. The doctrine of procedural default does not apply).

ineffective as a matter of law (cause and prejudice), and, therefore, he has a right to present his claims and be freed from an illegal conviction and an illegal sentence.

Petitioner/Plaintiff **judicially notices** this court that this is habeas petition pursuant to the original habeas corpus and not a motion or petition pursuant to 28 USC § 2255(1948) or 28 USC § 2241 (1948). **See Castro v. United States, 540 US 375 (2003).** Since different bills were passed by the House than were passed by the Senate for both Public Law 80-772 and Public Law 80-773, in violation of the presentment clause of the Constitution, Article I, Section 7, and since the 80th Congress **defrauded the American people** by altering the enrolled bills for both Public Laws 80-772 and 80-773 to make it appear that both bills passed Congress in the second session of the 80th Congress, then both bills, and all attachments thereto, are **frauds, forgeries and nullities,** i.e., never existed as a matter of law.

Petitioner is also entitled to immediate release since 21 U.S.C. § 841 was repealed by Congress and never re-enacted into law and without a penalty provision. No crime exists as a matter of law and Petitioner/Plaintiff's indictment and conviction are null and void.

<u>The question for this court is whether it intends to follow the Constitution of the United States, or whether the cost and convenience of the government is more important that the Constitution, If the court intends to follow the Constitution, as a matter of law, Petitioner/Plaintiff must be released. If the court refuses to follow the Constitution, then it has declared itself above the Constitution, violated it's oath of office, and acted in a criminal manner and the court should notify the American people that the U.S. Judiciary considers the Constitution no longer valid and thus unimportant to the American people.</u>

Petitioner/Plaintiff presents this Petition **verified**, in affidavit form. Therefore, the court **must take the facts presented in this petition as true** pending the evidentiary hearing required on this petition. petitioner/Plaintiff incorporates by reference for all purposes as if recited herein, his prior filings with this court attempting to overturn an illegal judgement and commitment order. See (attached docket sheet and attachments).

**Petitioner/Plaintiff also judicially notices the court of his entitlements as a matter of law pursuant to this Petition and expects the court to honor his Due Process rights:**

1)   Petitioner/Plaintiff is entitled to have his claims taken as true until proven otherwise or until disproven by affidavit or evidence. [2]

2)   Petitioner/Plaintiff is entitled to discovery related to his jurisdictional claims. [3]

3)   Petitioner/Plaintiff is entitled to have his Petition treated as presented pursuant to Supreme Court precedent. [4]

4)   Petitioner/Plaintiff is entitled to have rulings and findings of fact and law made on all of his claims. [5]

5)   Petitioner/Plaintiff is entitled to have judicial notice taken on facts and law of Public Law 80-772 and Public Law 80-773 and to have a **directed**

---

[2]   Petitioner presents his Petition in affidavit form, supported by facts, which must be taken as true. See **Kohlberg v. Lehlback, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed 432 (1895)**(facts duly alleged are deemed true unless denied or controverted by evidence); 3 AmJur2d, Affidavits,§20("The courts MUST accept an affidavit as true if it is uncontradicted by a counter-affidavit or evidence").

[3]   Where issues arise as to jurisdiction or venue, discovery under the federal rules of civil procedure (rules 26-27) is available to ascertain the facts bearing on such issues. **Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-351, 57 L.Ed.2d 253, 98 S.Ct. 2380 (1978).**

[4]   **Castro v. United States, 540 US 375 (2003).**
[5]   **F.R.Civ.P. 52(a) and F.R.Civ.P. 54(b)**

4

**verdict** declaring those statutes unconstitutional. [6]

6)    Petitioner/Plaintiff is entitled to a fair tribunal and an unbiased court, and has Constitutional rights to have this court, once it learns of the invalidity of the statutes in question, to follow the Constitution of the United States, and to make rulings that follow the law, **no matter how costly and inconvenient to the government.** [7]

## A.    Jurisdiction

Petitioner/Plaintiff **judicially notices** this court that this is a habeas pursuant to the original habeas corpus as authorized by the Constitution of the United States. **See** Article I, Section 9, Clause 2 **("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in the Cases of Rebellion or Invasion the Public Safety may require it").** Since 28 U.S.C. § 2255 and §2241 are nullities as a matter of law, 28 USC § 451, et seq. (1940), is the last valid habeas statute. However, 28 U.S.C. 451 (1940) was repealed with a statute defining courts, justices, districts, departments, and agencies. [8] Therefore, Petitioner/Plaintiff has a right to raise this Petition pursuant to the original habeas to correct his illegal imprisonment. Petitioner/Plaintiff judicially notices the court this is not a motion or petition pursuant to 28 USC § 2255 (1948) or 28 USC § 2241 (1948) because as established by judicially noticed

---

[6]   **F.R.E.201. U.S. v. Boyd, 289 F.3d 1254,1258(10th Cir.2002); Werner v. Werner, 267 F.3d 288,295(3d.Cir.2001); General Elec. Capital Corp v. Lease Resolution Corp., 128 F.3d 1074,1083(7th. Cir.1997).**

[7]   Constitution of the United States; Separation of Powers Doctrine.

[8]   **See** 28 USC § 451 (1948)(June 25, 1948, ch. 646, 62 Stat. 907). Since this statute is part of the fraudulent enactment of Public Law 80-773, it too is a nullity.

[9]   Any recharacterization by the court does not "create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." **Castro, 540 US 375.**
      See **Castro v. United States, 540 U.S. 375,** Justice Scalia, with Justice Thomas joins, concurring in part and concurring in the judgement:

facts and law, herein, those laws are nullities. **See** Castro v. United States, 540 US 375 (2003)(court must treat petition as presented). [9]

Since different bills were passed by the House than were passed by the Senate for both Public Law 80-772 and Public Law 80-773, in violation of the presentment clause of the Constitution, Article I, Section 7, and since the 80th. Congress defrauded the American people by altering the enrolled bills for both Public Law 80-772 and 80-773 to make it appear that both bills passed Congress in the second session of the 80th. Congress, then both bills, and all attachments thereto, are **nullities, i.e, never existed as a matter of law.** The question for this court is whether it intends to follow the Constitution of the United States, or whether the cost and convenience of the government is more important than the Constitution. Petitioner/Plaintiff is thus imprisoned, pursuant to invalid orders of a United States District Court.

---

In my view, this approach gives to little regard to the exceptional nature of recharacterization within an adversarial system, and neglects the harm that may be caused pro se litigants even when courts do comply with the Court's newly minted procedure. The practice of judicial recharacterization of pro se litigants motions is a mutation of the principle that he allegations of a pro se litigant's complaint are to be held 'to less stringent standards than formal pleadings drafted by lawyers.' **Haines v. Kerner, 404 U.S. 519, 520 (1972)(per curiam).** 'Liberal construction' of pro se pleadings is merely an embellishment of the notice pleading standard set forth in the Federal Rules of Civil Procedure, and thus is consistent with the general principle of American jurisprudence that 'the party who brings a suit is master to decide what law he will rely upon.' **The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913).** Our adversary system is designed around the premise that the parties know what is best for them, and responsible for advancing the facts and arguments entitling them to relief.

Recharacterization is unlike 'liberal construction,' in that it requires a Court deliberately to override the pro se litigant's choice of procedural vehicle for his claim. It is thus a paternalistic judicial exception to the principle of party self-determination, born of the belief that the 'parties know better' , assumption does not hold true for pro se prisoner litigants.

I am frankly not enamored of any departure from our traditional adversarial principles. It is not the job of a federal court to create a 'better correspondence' between the substance of a claim and its underlying procedural basis. But if departure from

**B.  Venue**

Venue is proper in this Court due to the following:

Pursuant to the original Habeas Corpus, a petition for Writ of Habeas Corpus may be filed in the district court of the jurisdiction wherein the prisoner is phyiscally located or in any court.  The Priviilege of the Writ of Habeas Corpus shall not be suspended, unless in cases of rebellion or invasion the public safety. may require it.  **Article I, §9, cl.2, of the Constitution.**  This court has jurisdiction over this Petition pursuant to the original habeas corpus.  If the court declares it does not have jurisdiction, Petitioner/Plaintiff requests that the Petition be immediately transferred to the court of jurisdiction.

**C.  Parties to the Proceedings**

Petitioner/Plaintiff is currently incarcerated, restrained of his liberty by an illegal verdict imposed by the United States District Court. And is currently housed in Oakdale, Louisiana.  He was [is] a victim of a fraudulent indictment, conviction, and sentencing, because all partie to the proceedings knew of the fraud and knew or should have known that the statutes used by the court to obtain its jurisdiction are nullities. Petitioner/Plaintiff is in care, custody and control of the United States Attorney General, Michael Mukasey, and his designee, the Warden of Petitioner/Plaintiff's place of incarceration.

Respondent/Defendant, Michael Mukasey, issued in his official capacity as the United States Attorney General.  In this capacity, he has the responsibility for the enforcement of service of rulings and judgments imposed pursuant of the  []  ....

---

traditional adversarial principle is to be allowed, it should certainly not occur in any situation where there is a risk that he patronized litigant will be harmed rather than assisted by the court's intervention. It is not just a matter of whether the litigant is more likely, or even much more likely, to be helped rather than harmed.  For the overriding rule of judicial intervention must be 'First do no harm."  **The injustice caused by letting the litigant's own mistake lie is regrettable, but incomparably less than the injustice of producing prejudice through the court's intervention.**

United States of America and is a legal custodian to Petitioner. He has designated control over this case to the warden of Petitioner'/Plaintiff's place of confinement. They are responsible for Petitioner's/Plaintiff's illegal conviction and imprisonment.

Respondent/Defendant, United States Bureau of Prisons and the Department of Justice (DOJ) by and on behalf of Attorney General, Alberto R. Gonzales, are the agencies responsible for enforcing the judgement of Petitioner/Plaintiff.

**D.    Issues Presented**

Petitioner/Plaintiff will establish by judicially noticed facts and settled issues herein that:

### ISSUE ONE:

Public Law 80-772 and therefore, 18 USC §§ 3231 are nullities, were never enacted into positive law, are unconstitutional on their face, and are void ab initio, rendering Petitioner's Indictment and conviction null and void as a matter of law. **Nullum Crimen, Sine Lege, Nulla Poena, Sine Lege**. The Attorney General's position on the constitution and the federal courts and the position of the Department of Justice regarding adjournments of Congress support petitioner's argument. The government is estopped from arguing otherwise.

1. The House of Representatives passed H.R. 3190 (Public Law 80-772) in the first session of the 80th. Congress, without the Senate passing the same bill, then adjourned sine die twice, thereby killing the bill.

2. The bill mysteriously showed up in the Senate near the end of the second session of the 80th. Congress. The Senate then amended the bill, then "passed" the amended bill, and the House voted on the amendments, but not on the amended bill. The bill was not Constitutionally passed into law and is a nullity.

3. Congress adjourned sine die on June 20, 1948, preventing any return of the bill to Congress, and the bill was signed into law after the adjournment of Congress.

4. The enrolled bill "passed" by the Senate was altered from the engrossed bill "passed" by the House, rendering it a fraud, forgery and therefore invalid.

5. No valid enactment clause exists as required by 1 U.S.C. § 101 (1947) because the bill did not pass both Houses of Congress and was not signed into positive law in Congress assembled.

## ISSUE TWO:

Public Law 80-773 and therefore 28 U.S.C. § 2255 (1948) and 28 U.S.C. § 2241 (1948) were never enacted into positive law, are unconstitutional on their face, and are void ab initio, allowing Petitioner/Plaintiff to raise this Petition pursuant to 28 U.S.C. § 451 (1940). et seq. The attorney general's position on the Constitution and the federal courts, and the position of the Department of Justice regarding adjournments of Congress support's Petitioner's argument. The Government is estopped from arguing otherwise.

6. The House of Representatives passed H.R. 3214 (Public Law 80-773) in the first session of the 80th. Congress, without the Senate passing the same bill, then adjourned sine die twice, thereby killing the bill.

7. The bill mysteriously showed up in the Senate near the end of the second session of the 80th. Congress. The Senate then amended the bill, then "passed" the amended bill, and the House voted on the amendments, but not on the amended bill. The bill was not Constitutionally passed into law and is a nullity.

8. Congress adjourned sine die on June 20, 1948, preventing any return of the bill to Congress, and the bill was signed into law after the adjournment of Congress.

9. The enrolled bill "passed" by the Senate was altered from the engrossed bill "passed" by the House, rendering it a fraud, a forgery and therefore invalid.

10. No valid enactment clause exists as required by 1 U.S.C. § 101 (1947) because the bill did not pass both Houses of Congress and was not signed into law in Congress assembled.

## ISSUE THREE:

21 U.S.C. §§ 841 and 846 are Invalid as Criminal Law since the penalty statute, 21 U.S.C. § 841, was repealed and not re-enacted into law, and without a penalty provision, no crime can be charged, and therefore no crime was committed. Petitioner's indictment and conviction are null and void.

## ISSUE FOUR:

The government comes to these proceedings having committed a **fraud on the court,** with **unclean hands,** in **bad faith,** and in violation of the principle of **fair dealing.** The Department of Justice's official position regarding the requirements to constitutionally pass legislation has been that **any adjournment** over **3 days** by Congress, constitutes a **sine die** adjournment and kills all pending legislation. That position has been presented to and argued before Congress and is established as DOJ's official policy to the American people. Although that is the government's official position before Congress and the people of the United States. The DOJ has been violating their own policy by illegally imprisoning people for years pursuant to statutes that **they know** are **unconstitutional** on their face and **null and void** ab initio. In other words, the DOJ has been talking out of both    sides

of their mouth, pretending to follow their official policies as professed to Congress, while illegally imprisoning U.S. citizens at the same time. The doctrines of **fraud, unclean hands, bad faith, and fair dealing** all apply herein, barring the government from relief, and requiring that Petitioner's indictment and conviction be dismissed with prejudice.

## E.    Waiver and Procedural Hurdles

Petitioner's claims are jurisdictional in nature and can be raised at any time. No procedural hurdle exists if a court has no jurisdiction over Petitioner. Lack of Article III jurisdiction cannot be waived and cannot be conferred upon a federal district court by consent, by action, or by stipulation. **California v. La Rue**, 400 U.S. 109, 112, 34 L.Ed. 342, 93 S.Ct. 390 (1972). **The validity of an order** on sentencing of a federal district court, depends upon that court having **jurisdiction** over both the subject matter and the defendant. **Stoll v. Gottlieb**, 305 U.S. 171-72, 83 L.Ed. 104, 59 S.Ct. 134 (1938). Petitioner's counsel had a Sixth Amendment right to investigate the facts and law related to the court's jurisdiction, and since jurisdiction is a threshold matter, the failure of counsel to investigate the facts and law and to know the court's jurisdiction renders him ineffective as a matter of law, i.e., a legal moron.

All issues presented in this Petition are jurisdictional in nature, or allow Petitioner to raise them as Constitutional violations due to the trial court's lack of jurisdiction, ab initio. Since the trial court never had jurisdiction over Petitioner. Petitioner is imprisoned for committing no crime, and thus Petitioner's indictment and conviction are null and void, ab initio. Petitioner has attempted to raise jurisdictional claims with the court but the court has failed to make findings of fact and law, rendering any prior orders void. The Government, further, came to these proceedings through fraud, with unclean hands, by unfair dealing, and in bad faith, rendering the indictment and conviction null and void ab initio.

10

F.  **The Attorney General's Official Position Regarding the Federal Courts and the Constitution of the United States**

Petitioner, In propria persona, requests the court to take judicial notice of the position of the Attorney General of the United States regarding and independent judiciary and the constitutional charter. In prepared remarks at George Mason University (Oct. 18, 2005 Newswire), the Attorney General stated his views of an independent judiciary.

"[W]ithin our system of self-government, the judiciary plays a vital but often misunderstood role. As Chief Justice Marshall explained in **Marbury v. Madison**, 'It is emphatically the province and duty of the judicial department to say what the law is.' But that was true only to the extent that the judiciary was implementing duly enacted laws that represented the **people's will**."

"James Madison said in Federalist 49:'[T]he people are the only legitimate fountain of power, and it is from them that the constitutional charter, under which the several branches of government hold their power, is derived.' Therefore, when judges import their personal preferences into constitutional decision making, it is a inconsistent with democratic ideals as if the judges had ignored the clear text of a statute."

"I have been a judge, so I am well aware that the court's real source of its legitimate role in our constitutional system. If a court **strays** from this role, its decisions will not command respect nor should they. And the surest way for courts to cede legitimacy is to ignore the will of the people as enshrined in the Constitution and in statutes- that is, for an unelected and unaccountable branch to impose its policy preferences on the nation. To do so is to undermine the consent of the governed, to deny the people their rightful ability to express their will (our will) through the democratic process."

"The framers of the constitution conceived a separate branch of the

government where judges would be independent and impartial. Of course, independence means federal judges are relatively unaccountable. So this system **only works** when the judiciary respects its place in it, which is why President Bush has sought to appoint judges who do not come to the bench with an agenda. This is not to say that a judge cannot have personal views on a subject, but judges must be disciplined and not allow those views to affect their decisions[.]"

It stands a fotiori that if the Attorney General expects the federal judiciary to be truly independent and uphold the Constitution, then he expects his own staff to uphold the ideals of the constitution as well.

## G.   Separation of Powers Doctrine

Petitioner requests the Court to take judicial notice of the Oath of Office sworn to by the officers of the Court and U.S. attorneys. The first law of the United States of America, enacted in the first session of the first Congress on 1 June 1789, was statute 1, Chapter 1: An act to regulate the time and manner of administering certain oaths, which established the oath required by civil and military officials to support the constitution. Although the wording of the oath has changed several times in the past two centuries, the basic foundation has withstood the test of time. The oath is more than a mere formality, it provides a foundation for leadership decisions. Violations of the oath of office are punishable under Title 18 U.S.C. § 1621 for Perjury of Oath of Office, which carries five year felony prison sentence and a $2,000 fine.

One of the fundamental principles of the United States system of government is the doctrine of separations of powers, which divides the functions of the government into executive, legislative, and judicial categories and requires that each type of function be exercised by a separate department, so that none of these departments or branches of government can impose upon another, functions that are not proper to it or usurp the powers of the other. One aspect of this doctrine

is the ban on delegation of powers: the proper functions of each branch of government must be performed by that branch and cannot be passed on to be exercised by others.  **16 Am Jur.2d, Constitutional Law, §332.** Thus, for example, since the Constitution of the United States assigns legislative function to the legislative branch of the government that is Congress USCS, Constitution, Art. I, §1... the power to enact, suspend, or repeal laws may not be delegated by Congress to any other authority or body, regardless of any exigency or emergency which may arise.  **16 Am Jur.2d, Constitutional Law, §335.**

The true meaning of the general doctrine of the separation of powers seems to be that whole power of one department should not be exercised by the same hands which possess the whole power of either of the depart- ments.  Thus, it is generally recognized that constitutional restraints are over-stepped where one department of government attempts to exercise powers exclusively delegated to another, [10] and that officers of any branch of government may not usurp or exercise the powers of either of the other.

## H.  Procedural History of Petitioner's Case:

Luna was indicted on or about August 17, 2005.  His indictment alleged that he and Pablo Marquez possessed more than 1000 kilograms of marijuana with intent to distribute.  A jury returned a verdict against Luna on October 26, 2005.  The Court Sentenced Luna to 240 months confinement in February 2006.  Luna appealed, and the Eighth Circuit of Appeals af- firmed the judgment on September 11, 2006.

## I.  Legal Standards for Void Judgments:

"[B]asic to a defendant's right [is] to have all critical stages of a criminal case conducted by a person with jurisdiction to proceed." **Gomez v. United States**, 490 U.S. 858, 104 L.Ed.2d 923, 940, 109 S.Ct. 2237 (1989).  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Con- stitution and the statutes enacted by Congress.

---

[10]  **Smith v. Dearborn Financial Service, Inc.** 982 F.2d 976 (6th Cir. 1993)

pursuant thereto." **Marbury v. Madison,** 1 U.S. 137, 173-180, 2 L.Ed.60 (1803); **Bender v. Wiliamsport Area School District,** 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501, 511 (1986). [11]

For that reason, every federal court has a special obligation to "satisfy itself of its own jurisdiction in a cause under review" even though the parties are prepared to concede it. **Mitchell v. Maurer,** 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934); **marbury v. Madison,** 1 U.S. 137. The jurisdiction of the federal courts **cannot be expanded** by judicial decree. **Kokkonen v. Guardian Life Ins. Co.,** 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed. 391 (1994).

The U.S. Supreme Court has ruled that if the record discloses that the lower court was without jurisdiction, this court will notice the defect although the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits, but merely for correcting the error of the lower court for entertaining the suit. **U.S. v. Corrick,** 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936); **See also; Sumner v. Mata,** 449 U.S. 539, 547-548 n.2, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); **Louisville & Nashville Rail Co. v. Mottley,** 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)(citing cases); **Capron v. Van Noorden,** 2 Cranch 126, 127, 2 L.Ed. 229 (1804).

This obligation to notice defects in a court's subject matter jurisdiction assumes a special importance when a constitutional issue is presented. In a long and venerable line of cases, the Supreme Court has held that without proper jurisdiction, a federal court cannot proceed at all, but can only note the jurisdictional defect and dismiss the cause for lack of jurisdiction. See **Capron**

---

[11]  Where issues arise as to jurisdiction or venue, **discovery** under the federal rules of civil procedure (rules 26-27) is available to ascertain the facts bearing on such issues. **Oppenheimer Fund, Inc. v. Sanders,** 437 U.S. 340, 350-351, 57 L.Ed.2d. 253, 98 S.Ct. 2380 (1978).

**v. Noorden**, 6 U.S. at 127. As a result, there is an initial presumption that federal courts lack subject-matter jurisdiction to resolve a particular suit. Id. Subject-matter jurisdiction cannot be waived or conferred by agreement of the parties. **Simon v. Wal-Mart Stores, Inc.**, 193 F.3d 848, 850 (5th. Cir. 1999).

It is well-settled that jurisdiction is established as a threshold matter, which springs from the nature and limits of the judicial power of the United States and is inflexible and without exception. **Mansfield C&L.M.R. Co. v. Swan,** 111 U.S. 379, 382, 28 L.Ed. 462, 4 S.Ct. 449 (1884); **Steel Company v. Citizens For A Better Enviornment,** 523 U.S. 83, 93-102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). **Rhode Island v. Massachusetts**, 37 U.S. 657, 12 Pet. 657, 9 L.Ed. 1233 (1838). This principle is grounded in "two centuries of jurisprudence affirming the necessity of **determining jurisdiction before proceeding to the facts.**" Steel **Co.**, 523 U.S. at 98-102. This reiterates the absolute purity of the Rule that Article III jurisdiction is **always an antecedent question.** Id.

Article III subject matter jurisdiction questions can be raised at any time and addressed by federal court at any time on their own motion. **McGrath v. Kristensen,** 340 U.S. 162, 95 L.Ed. 73, 71 S.Ct. 224 (1950). Lack of Article III jurisdiction cannot be waived and cannot be conferred upon a federal district court by consent, by action, or by stipulation. **California v. LaRue,** 400 U.S. 109, 112, 34 L.Ed. 342, 93 S.Ct. 390 (1972). The validity of an order on sentencing of a federal district court depends upon that court having jurisdiction over both the subject matter and the defendant. **Stoll v. Gottlieb,** 305 U.S. 171-172, 83 L.Ed. 104, 59 S.Ct. 134 (1938).

Unless the power or authority of the court to perform a contemplated act can be found in the constitution or laws enacted there under, it is **without jurisdiction** and its **acts are invalid. Angel v. Bullington,** 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); **LeMieux Bros. Inc. v. Tremont Lumber Co., Ltd.,**

15

140 F.2d 387, 389 (5th Cir. 1944); **Thomas v. Arn**, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985)(quoting **United States v. Payner**, 447 U.S. 727, 65 L.Ed.2d 468, 100 S.Ct. 2439 (1890))("[e]ven a sensible and efficient use of the supervisory power [of the court] however, is invalid if it conflicts with constitutional or statutory provisions. A contrary result would confer on the judiciary power to disregard the considered limitations of the law it is charged with enforcing.").

The presumption is that causes are not within the jurisdiction of the federal courts unless the contrary affirmatively appears. It is to be presumed , a cause lies outside the limited jurisdiction and the burden of establishing the contrary rests upon the government. **Bess v. Preston**, 11 U.S. 252, 258-262, 4 S.Ct. 407 (1984); **Hanford v. Davis**, 163 U.S. 273, 278-280, 16 S.Ct. 1051, 1052-1054, 41 L.Ed. 157 (1896)("It is well settled that...jurisdiction of a circuit court of the U.S. is limited in the sense that it has no other jurisdiction than that conferred by the constitution and the laws of the U.S."). There is no presumption in favor of the jurisdiction of the courts of the U.S.. **Ex parte Smith**, 94 U.S. 455, 24 L.Ed 165 (1877).

A federal court is further obliged to note lack of subject matter jurisdiction sua sponte. **Mansfield C.&L.M.R. Co. v. Swan**, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 482 (1884); **Louisville & Nashville R.Co. v Mottley**, 211 U.S. 149; **Summer v. Mata**, 449 U.S. at 548, n.2.

Simply stated, without Article III subject matter jurisdiction, a court cannot proceed at all on a cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing this fact and dismissing the cause. **Ex Parte McCardle**, 74 U.S. 506, 514, 19 L.Ed. 264, 73 S.Ct. 318 (1868); **Steel Co. v. Citizens for a Better Environment**, 523 U.S. at 94. A litigant's failure to clear a jurisdictional

hurdle can never be harmless or waived by the court. **Torres v. Oakland Scavenger Co.**, 487 U.S. 312, 322-324, 101 L.Ed.2d 285, 108 S.Ct. 2405 (1988).

An order or judgement obtained in violation of **due process**, obtained by **fraud**, obtained by **collusion** of the parties, or obtained without **jurisdiction** is <u>void</u>. See, e.g., **William v. New Orleans Public Service, Inc.**, 728 F.2d 730, 735 (5th Cir. 1984); **New York Life Insurance Co. v. Brown**, 84 F.3d 137, 143 (5th Cir. 1996); **Government Financial Service One L.P. v. Peyton Place**, 62 F.3d 767, 772-773 (5th Cir. 1995); **Stoll v. Gottlieb**, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); **Bradley v. Fisher**, 80 U.S. 335, 351-352, 13 Wall 335, 20 L.Ed. 646 (1871)(When there is clearly no jurisdiction over the subject matter, any authority exercised is **usurped authority**, and no excuse is permissible if the **judge knows** of his or her lack of authority); **Angel v. Bullington, supra**. No time limit exists for an attack on a void judgement. See **Briley v. Hidalgo**, 981 F.2d 246, 249 (5th Cir. 1993). A void judgement is one that, **from its inception**, is a complete **nullity** and without legal effect. **Holstein v, Chicago**, 803 F.Supp. 205, (N.D. Ill. 1992), recons. denied, 149 FRD 147, and affirmed, (7th Cir. 1994), US App LEXIS 17428; **Jones v. Giles**, 741 F.2d 245 (9th Cir. 1984). A court has **no discretion** regarding a **void judgement** and the right to relief is absolute. See **Brazosport Towing Co. v. 3,838 Tons of Sorghum Laden**, 607 F. Supp. 11, 15 to 16 (S.D. Tex. 1984) affirmed without opinion, 790 F.2d 791 (5th Cir. 1985); **Recreational Properties v. Southwest Mortgage Services, Inc.**, 804 F.2d 311, 314 (5th Cir. 1986); **Burnham v. Superior Court of California**, 495 U.S. 604, 609, 110 S.Ct. 2105, 109 L.Ed.2d. 631 (1990)(the proposition that a judgement of a court is **void** traces back to the English Year Books and is embodied in the phrase **Coram non judice**) [12]

Petitioner/Plaintiff is entitled to relief from the judgements and orders of the district court on his habeas petition, because evidence exists **beyond**

**a reasonable doubt** that the judgement and orders were obtained in violation of of Due Process, were obtained in violation of the Constitution and laws of the United States, were obtained by fraud, and were obtained in excess of the court's jurisdiction, rendering any judgement and orders **void as a matter of law**. The fraud and Constitutional violations prevented Petitioner from previously raising his claims on the merits and deprived Petitioner of his right of access to the court and the right to prove his innocence and be free from unlawful constraints.

Settled law also **entitles** Petitioner to an **evidentiary hearing** when he alleges facts which, if proven, would warrant habeas relief. Petitioner's petition is verified and his pleadings are presented in affidavit form supported by evidence. See **Townsend v. Sain**, 372 U.S. 293, 307-309, 311 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); **United States v. Barboa**, 777 F.2d. 1420, 1422 (10th Cir. 1985); **United States v. Hayman**, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952)(A petitioner's allegations **must be taken as true** and where petitioner's allegations, if proven, would entitle him to relief, he is **entitled to an evidentiary hearing** and an opportunity to prove the truth of the matters asserted).

A judgement may not be rendered in violation of Constitutional limits and guarantees. See **Hanson v. Deckla**, 357 U.S. 235, 256, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A fundamental requirement of **Due Process** is the **opportunity to be heard** at a **meaningful time** and in a **meaningful manner**. Const. Amend. V ; **Mathews v. Eldridge**, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); **Armstrong**

---

[12]  Petitioner presents his filings to the court in affidavit form, supported by evidence. The evidence is judicially notice to the court and **must be taken as true**. See **Kohlberg v. Lehlback**, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed 432(1895)(facts duly alleged are deemed true unless denied or controverted by evidence); 3 AmJur2d, Affidavits, § 20("The courts **MUST** accept an affidavit as true if it is uncontradicted by a counter-affidavit or evidence").

v. **Manzo**, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); **Hammond Packing Co. v. State of Arkansas**, 212 U.S. 322, 29 S.Ct. 370, 3 L.Ed. 530 (1909). Due process forbids even the **appearance of vindictiveness**. **Bordenkircher v. Hayes**, 434 US 357, 362, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Due process also includes the right to introduce evidence and have judicial findings made on that evidence. **Jenning v. Maloney**, 404 US 25, 92 S.Ct 180, 30 L.Ed.2d 146 (1971); **Jenkins v. McKeithen**, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), rehearing denied, 396 US 869 (1969). Without jurisdiction, any judgement is without **DUE PROCESS** and ineffectual and all proceedings are **VOID** and of no value. **16b AmJur.2d, Constitutional Law, §966.**

The right of access to the courts is corollary to the right to petition for habeas corpus and may not be abridged. See **Johnson v. Avery**, 393 US 483, 485-487, 89 S.Ct. 747, 21 L.Ed.2d 718 (1968); **Mathews v. Eldridge**, 424 US 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). **Bounds v. Smith,** 430 US 817, 821-822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)(**"the state and it's officers may not abridge or impair petitioner's right o apply to a federal court for a writ of habeas corpus"**). A departure from established modes of procedures can render the judgement void where the **procedural defects** are of sufficient magnitude to constitute a violation of Due Process or so unfair to deprive the proceedings of vitality or the irregularities are serious enough to be deemed jurisdictional. **Windsor v. McVeigh**, 93 U.S. 274, 282, 23 L.Ed. 914 (1876); **Eagles v United States**, 329 U.S. 304, 314, 91 L.Ed. 308 (1946).

## J.    Legal Standard for Constitutional Statutes

Penal laws are construed strictly because legislatures, not courts, define crimes and establish punishments. **Yates v. United States**, 354 U.S. 298, 304, 775 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds; **Burks v. United States,** 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Article I,

Section 5, Clause 4 of the Constitution requires that "Neither House, during the Session of Congress, shall, without the Consent of the other, adjourn for **more than three days,** nor to nay other Place than that in which the two Houses shall be sitting." Article I, Section 7, Clause 2 requires every bill to have **passed both Houses** of Congress and be presented to the President before it can become law. Thus, **a bill must pass both Houses of Congress** to be valid. Article I, §7, Clause 2, U.S. Constitution; **Field v. Clark**, 143 U.S. 649, 36 L.Ed. 294, 12 S.Ct. 495 (1892); **National Bank of Oregon v. Insurance Agents**, 508 U.S. 439, 455, 124 L.Ed.2d 402, 418 n.7, 113 S.Ct. 2173 (1993).

The law is established that to sustain a crime, the statute alleged to have been violated must have been **duly enacted** by the legislature. See **Hotch v. United States**, 212 F.2d 283, 284 (9th Cir. 1954)("a law which has not been duly enacted, is **not a law**, and therefore a person who does not comply with its provisions cannot be guilty of any crime. An act repugnant to the Constitution is **void**. Cooper v. Telfair**, 4 U.S. 14, 1 L.Ed. 721 (1900); **Marbury v. Madison**, 5 U.S. 137. The Constitution must prevail where the inconsistency with a statute is clear. **Powell v. Pennsylvania**, 127 U.S. 678, 33 L.Ed. 253, 8 S.Ct. 992 (1888); **Brimmer v. Rebman**, 138 U.S. 78, 11 S.Ct. 213, 3 L.Ed. 862 (1891)("A statute that violates the Federal Constitution is **void** regardless of the purposes of its recitals); **Cooper v. Telfair**, 4 U.S. 14, 1 L.Ed. 721 (1800). **Longevity does not insure that a statute is constitutional. Brennan v. U.S. Postal Service**, Per Marshall, J. as circuit justice, 439 U.S. 1345, 58 L.Ed.2d 51, 98 S.Ct. 22 (1978). "The question is not how long the parties assumed a certain state of law, but whether that state of law is merely an assumption. **The passage of time, the acquiescence of the parties, the assumptions of officials, even all taken together cannot enact a statute.** Legislation only comes into existence through **bicameral** congressional enactment and presentment

to the President of the United States. **Independent Insurance Agents of America, Inc. v. Clarke**, 965 F.2d 1077, 1078 (D.C. Cir. 1992). [13] Normal Congressional procedures require that any legislation that is terminated **sine die** in the first session of Congress to be **reintroduced** as new legislation under a new number in the next session. See, e.g., **H.R. 4233**, which died sine die in the first session of the 79th Congress, and its reintroduction as **H.R. 6723** in the second session of the 79th Congress. **"Adjournment sine die means final adjournments for the session. See Black's Law Dictionary 1385 (6th Ed. 1990)." Vanderbilt v. Babbitt**, 113 F.3d 1061, 1064 FN(2) (9th Cir. 1997).

Imprisonment under a void order is without authority of law and one so imprisoned will be discharged on habeas corpus. **In re Ayers**, 123 U.S., 31 L.Ed. 216, 8 S.Ct. 164 (1887); **Fay v. Noia**, 372 U.S. 414, 423, 9 L.Ed.2d 837, 83 S.CT. 822 (1963); **Ex Parte Siebold**, 100 U.S. 371, 25 L.Ed. 717 (1879). "[T]he rule, springing from the nature and limits of the jurisdictional power of the United States is **inflexible and without exception**, which requires the court of its **own motion**, to deny its jurisdiction, and in the exercise of its appellate power, that all other courts of the United States in all cases where such jurisdiction does not affirmatively appear on record." **Mansfield, C. & L.M.R. Co. v. Swan**, 111 U.S. 379, 382, 28 L.Ed. 462, 4 S.Ct. 510 (1884). As the statutes pursuant to which petitioner was indicted, convicted, and sentenced were never enacted into positive law, are unconstitutional on their face, and are null and void and the court has a duty to issue and order for his release.

---

[13]    Petitioner requests that the court take **judicial notice** of the Constitution of The United States, which establishes the requirement for legislation to be valid; See **Marbury v. Madison**, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60(1803)(Courts of the United States are bound to take notice of the Constitution). Petitioner also requests the court to take **judicial notice** of the records of the 80th Congress as referenced herein, which establishes the invalidity of the passage of P.L. 80-772 and P.L. 80-773 of the U.S. Code.

A legislature's failure to act on a pending bill or other matters needing legislative approval, before the legislature **adjourns sine die,** effectively kills that bill or matter. See. e.g., **Watkins v. Board of Trustees of Alabama State University,** 703 So. 2d 335, 122 Ed. Law Rep. 1316 (Ala. 1997). As stated in **Anderson v. Dunn,** 19 U.S. (6 Wheaton) 204, 5 L.Ed. 242 (1821)."...although the legislative power constitutes perpetual, the legislative body **ceases to exist** on the moment of its **adjournment or periodical dissolution...** Continuity of a session of Congress is broken **only by an adjournment sine die; Blanchette, et al. v. United States,** 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

The issues presented herein are **not legal rocket science. Even a federal prosecutor could figure them out.** Elementary school civics lessons establish the unconstitutionality of the legislation of both Public Law 80-772 and Public Law 80-773. **Different bills were passed by the House than were passed by the Senate.** A similar problem, for example, now exists related to the Deficit Reduction Omnibus Reconciliation Act of 2005, for which **Public Citizen** has filed suit against the government. "For anyone who took fifth-grade social studies or sang 'I'm just a bill,' how legislation turns to law is pretty simple. The House passes a bill, the Senate passes the same bill, the president signs it. 'This is simple elementary-school civics', said Public Citizen lawyer Adina H. Rosenbaum, announcing that the group had filed suit in U.S. District court to nullify the Deficit Reduction Omnibus Reconciliation Act of 2005. 'The court should **declare void** laws passed in an unconstitutional manner.' The Constitution is broad and vague on a number of things, but this is not one of them,' Attorney Jim Zeigler has said. **The same bill must be passed by the House the Senate and signed by the President. Otherwise it's not law. Case Over'"** [14].

[14] Available for download at www.washingtonpost.com/wpdyn/content/article/ 2006/03/21/AR2006032101763_p

Just like in the Deficit Reduction Omnibus Reconciliation Act, both Public Laws 80-772 and 80-773, the twin statutory enactment frauds of the 80th Congress, are nullities, not law.

## K.  Evidence Now Shows that President Truman Was a Dishonest President

It would be possibly acceptable for the government to argue the validity of the statutes signed into law by President Truman if he had not committed crimes in other areas of his administration. Since evidence now shows that he set up the CIA to secretly conceal billions of dollars of World War II loot, it is **presumed** that anything he did was dishonest, including the fraudulent enactment of the statutes provided herein. As provided in the years of research by Peggy and Sterling Seagraves, former Washington Post reporters, in their book, **Gold Warriors** [15], and their threatened murder for disclosing the evidence, President Truman set up a secret fund to hide Yamashita's gold. He hen set up the CIA in 1947 to be accountable to Congress and to cover up the secret fund and to avoid his duties according to the Constitution and laws of the United States. Therefore, the presumption in these proceedings is that the statutes were fraudulently enacted with his cooperation.

## L.  The Statutes Violate the Presentment Clause, Rendering Them Nullities

The government obtains the jurisdiction of the court pursuant to 18 U.S.C. § 3231 (1948). That statute was part of the enactment of Public Law 80-772 (derived from H.R. 3190) in the 80th Congress of the United States. Public Law 80-773 (derived from H.R. 3214) was also "passed" by Congress at the same time and includes 28 U.S.C. §§ 2255 and 2241. The court's

[15]  **Gold Warriors**, Peggy and Sterling Seagraves, ISBN No.1859845428, Verso, October 2003.

jurisdiction, like Public Law 80-772 and Public Law 80-773, is a nullity because those statutes are a **nullity**. Public Law 80-772 and Public Law 80-773 were never enacted into positive law, are unconstitutional on their face, and are null and void ab initio. [16] Likewise, 18 U.S.C. § 3231 is also a nullity as it is part of the fraudulent enactment of Public Law 80-772, 18 U.S.C. §§ 2255 and 2241 were never enacted into positive law, are unconstitutional on their face, and are null and void ab initio, rendering Appellant's indictment **null and void and his right to relief pursuant to the prior habeas statute.** Those statutes conflict with the procedural requirements of the **Presentment Clause** because the House and Senate passed different bills.

The House and Senate passed different bills for Public Law 80-772 and Public Law 80-773 and manipulated the legislative proceedings, in violation of the Prestment Clause and the Separation of Powers Doctrine. H.R. 3190 and H.R. 3214 **died sine die twice** in the first session of the 80th Congress without the Senate passing the same bill. The December 19, 1947 adjournment was announced as sine die adjournment, and can be confirmed as such in the Statues at Large. The **dead bills** surfaced near the end of the second session

---

[16]    The Supreme Court has repeatedly made clear that "sovereign immunity would shield an executive officer from suit if the officer acted either 'unconstitutionally or beyond his statutory powers.'" **Dalton**, 511 U.S. at 472 (quoting **Larson v. Domestic & Foreign Commerce Corp.**, 337 U.S. 682, 691, n.11 (1949))(emphasis added by Dalton Court). As the court explained in Larson:
There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign...A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereigns's name is claimed to be unconstitutional. Actions for habeas corpus against a warden and injunctions against the threatened enforcement of unconstitutional statutes are familiar examples of this type. Here, too, the conduct against specific relief sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign. The only difference [from a case in which the officer lacks even a colorable claim of authority] is that in this case the power [that] has been conferred in form by the grant is lacking in substance because of its constitutional invalidity. 337 U.S. at 689-90; see also **Dugan v. Rank**, 372 U.S. 609, 621-22(1963); **Malone v. Bowdoin**, 369 U.S. 643, 647(1962); **Scranton v. Wheeler,**

of the 80th Congress, **still as a House Bill**. The Senate **amended the bills, the "passed" the amended bills.** The Senate did not pass the bills as Senate Bills, but as the same House bills, H.R. 3190 and H.R. 3214. Since the bills passed by the House are different that the bills passed by the Senate, they violate the "single, finely wrought" Constitutional procedure fort making laws, **INS v. Chadha**, 462 U.S. 919, 951 (1983), which is indivisible. [17] The bills are further unconstitutional because they violate the Separation of Powers Doctrine, do not have a valid enactment clause, and were enrolled by fraud. [18]

The Constitution vests legislative responsibility in a bicameral Congress subject to a limited check by the president. The Presentment Clause establishes **precise and detailed procedural requirements** governing the presentment by Congress and approval by the president of any "Bill". **Art. I, § 7, Cl. 2.** That Presentment Clause, which defines the requirements to pass Constitutional legislation, carries a 230 year pedigree.

The framers imposed no restrictions on the number or variety of provisions that a single "Bill" may contain. Congress's typical practice has been to combine numerous and disparate bills into a single bill, to be approved or returned to the president to make an **all-or-nothing** choice regarding a broad and multifarious legislative package, even though he might prefer to accept some items and reject others. The **in toto requirement** serves

---

179 U.S. 141, 152-53 (1900).

[17]   Other than requiring that revenue bills originate in the house, the constitution's lawmaking system is the same for all bills.

[18]   It is a fundamental principle that Congress is presumed to legislate with an awareness of existing law.

to ensure that Congress retains ultimate authority to define the range of choices available to the President. [19] Furthermore, the Statutes at Large show **no** severability clause for Public Law 80-772 or for Public Law 80-773.

When Congress presents the president with a bill under Article I, Section 7 of the Constitution, the bill can become law in one of three ways: the president can sign it, he can let it become law without his signature; or, if the President vetoes the bill by returning it with his objections, Congress can override the veto by a two-thirds vote in each House. These requirements govern "amendment and repeal of statutes, no less than enactment of them." **INS v. Chadha**, 462 U.S. at 954.

The Framers built on the principle, long settled in England, that the Executive should not alter legislation, but be limited to approving or disapproving laws. They rejected proposals to grant the president an absolute final power to disapprove bills, and instead provided the Executive with a limited role in the legislative process. The requirement that the House and Senate, elected on different electoral principles, must agree before any new law is made or an existing one is changed or repealed, is an essential feature of the Framer's lawmaking system. The Constitution mandates the concurrence of both Houses to the final contents of spending and tax bills, as well as

---

[19] By the constitution's design, the requirement that the approval or veto power of the President applies to entire bills, also tempers that power. Informed by having presided at the Constitutional Convention, George Washington understood the Presidents unavoidable constitutional choice, to accept the bad (in the President's eyes) with the good, or reject the good with the bad. In a 1793 letter to Edmund Pendleton, Washington wrote: "You do no more than Justice when you suppose that from motives of respect to the Legislature (and I might add from my interpretation of the Constitution), I give my Signature to many Bills which my judgement is at variance... From the nature of the constitution, I must approve all of a Bill, or reject it in toto. To do the latter can only be Justified upon the clear and obvious ground of propriety;..."

26

other legislation. Therefore, the lawmaking system established by the constitution operates on a simple principle. **Both the Senate and House have to agree to _every_ legislative measure or it cannot become law. The steps are precise.** Every bill must first "have passed the House of Representatives and the Senate." "Before it becomes a Law," each bill must "be presented to the President." The President's choices are exactly stated" "If he approves he shall sign it, but if not he shall return it." The manner of return is prescribed: the bill is to be accompanied by "his objections," it is to go "to that House in which it shall have originated," and that House "shall enter the objections at large, on their journal." **Art. I, Section 7, Cl. 2.** Either House may "propose" amendments to any bill, but each needs to concur in the other's amendments before the bill may become law, **following the principles established by the Constitution.** The President may "return" a bill for "reconsideration", Id. Cl.2, but has no power to alter any bill. See **U.S. Const., Art. I, § 7, Cl.1.**

Not only is the "concurrence of separate and dissimilar bodies required in every public act," **The Federalist No. 63, p.427 (Madison),** but each House through the amending process has an equal opportunity to shape every law, subject to the concurrence of the other House. The accommodation of differences is a vital task in a representative democracy. The Constitution provides ground rules for revisiting compromises. They require that the two Houses agree in order to change the terms of a bargain between them.

Public Law 80-772 and Public Law 80-773, as "passed", undermine the public's interest in faithful adherence to the separation of powers. The Acts violate Article I, because they violate the Presentment Clause and the Separation of Powers Doctrine. The bills were passed by the House in the first session of the 80th Congress, **died sine die twice** when the Senate did not vote

on them. Then the Senate passed the dead bills in the second Session of the 80th Congress **with amendments**. Therefore, the House bills "passed" in the first session are different that the House bills "passed" by the Senate in the second session, a direct violation of Article I, Section 7, Cl.1 of the Constitution. In "[p]roducing laws in violation of the requirement of bicameral passage," **J.S. App. 27a**, Public Law 80-772 and Public Law 80-773 undermines the genius of the Constitution's lawmaking system. It is fundamental Constitutional law. The actions of the 80th Congress regarding Public Law 80-772 and Public Law 80-773 compromised essential responsibilities under the Constitution, and disrupted other balances by the Framers.

The constitutional requirements to enact legislation also keep in good repair the fabric that allows separate political branches to work in mutual respect to "integrate the dispersed powers into a workable government." **Youngstown Sheet & Tube Co. v Swayer**, 343 U.S. 579, 635 (1952)(Jackson, J., concurring). The different course taken by the 80th Congress damaged that fabric. The court has repeatedly held that the separation of powers is not merely an intramural interest of the branches of government. Abridgement of the separation of powers threatens harm to all whose "liberty and security" are its "ultimate purpose." **Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise, Inc.,** 501 U.S. 252, 272 (1991); see also **United States v. Munoz-Flores,** 495 U.S. 385, 395 (1990)(allocation of lawmaking authority under Art. I, § 7, Cl.1 of the constitution "safeguard[s] liberty").

The public has a further stake in faithful adherence to the separation of powers in lawmaking: "effective and accountable" government. **Loving v. United States,** 517 U.S. 748, 757 (1996). Effectiveness is promoted because Article I's requirements of representation and bicameralism make Congress "the

branch most capable of responsive and deliberative lawmaking." Public accountability is aided because the "clear assignment of power to a branch, furthermore, allows the citizen to know who may be called to answer for making, or not making, those delicate and necessary decisions essential to governance." Id. at 757-58. Both Public Law 80-772 and Public Law 80-773 fail on these counts. The separate House of Congress, together with the President, knowingly manipulated the Constitutional requirements of the presentment Clause to enact legislation that is **unconstitutional on its face.** Liberty and security are threatened when the House, Senate, or President are allowed to ignore the rules created by the Framers to enact Constitutional legislation, and together, manipulate those procedures to pass legislation that effects the American people. Accountability is diminished when, as occurs under these Acts, responsibility for the final content of legislation is blurred.

**M.    Petitioner Has a Right to Judicial Notice of the Facts and Law**

**I. Defendant Requests Judicial Notice of Facts**

Judicial notice dispenses with formal proof of fact that is easily determinable from reliable sources. It is a rule of convenience that saves time by eliminating the need for proof of facts about which there is no real controversy. FRE 201.

The facts from the Congressional Record, which establishes the unconstitutionality of the referenced statutes on their faces, are judicially noticeable as they were not subject to a reasonable dispute and were capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, i.e., the Congressional Record. FRE 201(b); **U.S. v. Boyd,** 289 F.3d 1254, 1258 (10th Cir. 2002); **LaSalle National Bank v. First Conn. HOlding Group, LLC,** 287 F.3d 279, 290 (3rd Cir. 2002); **Ritter v. Hughes**

Aircraft Co., 58 F.3d 454, 458 (9th Cir. 1995); **Lussier v. Runyon,** 50 F.3d
1103, 1113-14 (1st Cir. 1995); **York v. AT&T,** 95 F.3d 948, 958 (10th Cir.
1996); **Cantrell v. Knoxville County Development Corp.,** 60 F.3d 1177, 1180 (6th
Cir. 1995).

The facts and law which establish the unconstitutionality of the statutes
are now judicially noticed on the record, because the court is **REQUIRED!!!**
to take judicial notice as mandatory. See **FRE 201(d)**(the court **must** take
judicial notice of adjudicative facts when properly requested and supplied
with the necessary information).

Since the facts have now been judicially noticed, those facts have now
been established as a matter of law. See **FRE 201(g);** 1972 Notes to FRE 201
at ¶31. In other words, by judicially noticing the facts that established as
a matter of law that Public Law 80-772 and 18 U.S.C. § 3231 (1948) were never
enacted into law, are unconstitutional on their face, and are null and void
ab initio. It has the same effect as **directing a verdict against Respondent**
related to the judicially noticed facts. **U.S. v Boyd,** 289 F.3d 1254, 1258
(10th Cir. 2002); **Werner v. Werner,** 267 F.3d 288, 295 (3rd Cir. 2002); **General
Elec. Capital Corp. v/ Lease resolution Corp.,** 128 F. 3d 1074, 1083 (7th Cir.
1997).

## II. Defendant Requests Judicial Notice of the Law

Defendant is entitled to take judicial notice of the law of the case.
The law is a fact and the court is presumed to know the law or where to find
it. **United States v. Rivero,** 532 F.2d 450 (5th Cir. 1976). A matter of law
may be judicially noticed as a matter of fact, that is, the court can look
to the law not as a rule governing the case before it, but as a social fact
with evidentiary consequences. **City of Wichita v. U.S. Gypsum Co.,** 72 F.3d
1491, 1496 (10th Cir. 1996). Defendant requests the court to take judicial

notice of the law:

1. Penal laws are **construed strictly** because legislatures, not courts, define crimes and establish punishments. **Yates v. United States**, 354 U.S. 298, 304, 775 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds, **Burks v. United States**, 437 U.S. 1, 98 S.Ct. 2141, 57 L.ED.2d 1 (1978).

2. "Neither House, during the Session of Congress, shall, without the consent of the other, **adjourn for more than three days,** nor to any other place than that in which the two Houses shall be sitting." **Article I, § 5, Cl.4 of the Constitution.**

3. Every bill must **pass both Houses** of Congress and be presented to the President before it can become law. **Article I, § 7, Cl.2, U.S. Constitution; Field v. Clark**, 143 U.S. 649, 36 L.Ed. 294, 12 S.Ct. 495 (1892); **National Bank of Oregon v. Insurance Agents**, 508 U.S. 439, 455, 124 L.Ed.2d 402, 418 n.7, 113 S.CT. 2173 (1993).

4. To have a valid enactment clause, a statute must have Constitutionally passed both Houses of Congress and must have been enacted into Congress assembled. **1 U.S.C. § 101.**

5. To sustain a crime , the statute alleged to have been violated must have been **duly enacted** by the legislature. See **Hotch v. United States**, 212 F.2d 283, 284 (9th Cir. 1954)("a law which **has not been duly enacted** is **not a law,** and therefore a person who does not comply with its provisions cannot be guilty of any crime.

6. An act repugnant to the Constitution is **void. Cooper v. Telfair**, 4 Dal 14, 1 L.Ed. 721 (1900); **Marbury v. Madison,** 5 U.S. 137.

7. The Constitution must prevail where the inconsistency with a statute is clear. **Powell v. Pennsylvania,** 127 U.S. 678, 33 L.Ed. 253, 8 S.Ct. 992 (1888); **Brimmer v. Rebman,** 138 U.S. 78, 11 S.Ct. 213, 3 L.Ed. 862 (1891)(A statute that

violates the Federal Constitution is **void** regardless of the purposes of its recitals); **Copper v. Telfair**, 4 U.S. 14, 1 L.Ed. 721 (1800).

8. Longevity does not insure that a statute is constitutional. "The question is not how long the parties assumed a certain state of law, but whether that state of law is merely an assumption. **The passage of time, the acquiescence of the parties, the assumptions of officials, even all taken together cannot enact a statute. Brennan v. U.S. Postal Service**, Per Marshall, J. as circuit judge, 439 U.S. 1345, 58 L.Ed.2d 51, 98 S.Ct. 22 (1978).

9. Legislation only comes into existence through **bicameral** congressional enactment and presentment to the President of the United States. **Independent Insurance Agents of America, Inc. v. Clarke**, 965 F.2d. 1077, 1078 (D.C. Cir. 1992).

10. Continuity of a session of Congress is broken **only by an adjournment sine die. Blanchette, et al. v. United States**, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)("...although the legislative power continues perpetual, the legislative body ceases **to exist** on the moment of its adjournment or periodical dissolution...") Anderson v. Dunn, 19 U.S. (6 Wheaton) 204, 5 L.Ed. 242 (1821). A legislature's failure to act on a pending bill or other matters needing legislative approval, before the legislature **adjourns sine die,** effectively kills that bill or matter. See, e.g., Watkins v. **Board of Trustees of Alabama State University**, 703 So. 2d 335, 122 Ed. Law Rep. 1316 (Ala. 1997). **"Adjournment sine die means final adjournment for the session. See Black's Law Dictionary** 1385 (6th Ed. 1990)." **Vanderbilt v. Babbitt**, 113 F.3d 1061, 1068, FN (9th Cir. 1997). Normal Congressional procedures require that any legislation that is terminated **sine die** in the first session of Congress be **reintroduced** as **new legislation** under a new number in the next session. See, e.g., **HR 4233**, which die sine die in the first session of the 79th Congress, and its reintroduction as HR 6723 in the second

32

session of the 79th Congress. An djournment sine die results in the death of all pending legislation, (See **Floyd M. Riddick, The United States Congress: Organization and Procedure 56** (1949)), making passage and presentment to the President **impossible.** See, **U.S. Const. Art. I, §§7; The Pocket Veto Case,** 279 U.S. at 681 (1929)(final adjournment of Congress "terminates the legislative existence of the Congress").

11. Imprisonment under a void order is without authority of law and one so imprisoned will be discharged on habeas corpus. **In re Ayers,** 123 U.S. 443, 31 L.Ed. 216, 8 S.Ct. 164 (1887); **Fay v. Noia,** 372 U.S. 414, 423, 9 L.Ed.2d 837, 83 S.Ct. 822 (1963); **Ex Parte Siebold,** 100 U.S. 371, 25 L.Ed. 717 (1879).

12. "[T]he rule, springing from the nature and limits of the jurisdictional power of the United States is **inflexible and without exception,** which requires the court of its **own motion,** to deny its jurisdiction, and in the exercise of its appellate power, that all other courts of the United States in all cases where such jurisdiction does not affirmatively appear on record." **Mansfield, C. & L.M.R. Co. v. Swan,** 111 U.S. 379, 382, 28 L.Ed. 462, 4 S.Ct. 510 (1884).

13. "You have asked this office to analyze the legal effectiveness of a congressional subpoena issued **after a sine die adjournment of Congress.** In a 1982 **opinion,** this Office concluded that a congressional subpoena issued during a session of Congress lacks present force and effect after the adjournment sine die of Congress, **6 Op. O.L.C. 744 (1982). According** to that opinion, the lapse in **legal effectiveness results from the same factors that produce, at the same time, the death of all pending legislation not enacted...**" Memorandum for Janet Reno, Attorney General, November 12, 1996, pg.1.

14. "Prorogation or dissolution, constitutes there what is called session, provided some act is passed. In this case, all matters depending before them are discontinued, and at their next meeting are to be taken up de novo, if taken up

at all. **1 Blackst., 186....**If convened by the president's proclamation, **this must** begin a new session, and of course, determine the preceding one to have been a session." **107th Congress House Rules Manual.** See pg.1, Modes of separation.

15. "The Senate and the House of Representatives adjourned on June 20, 1948, under a 'conditional final adjournment' resolution, H. Con. Res.218, 94 Cong. Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specific Senate and house leaders. **In effect, the adjournment was a sine die adjournment, not an intrasession adjournment.** On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President **pocket vetoed 14** bills presented to him after the adjournment of June 20, 1948. "No record exists that Congress left a messenger behind to receive correspondence from the President or the return of bills." **Kennedy v. Sampson,** 511 F.2d 430, 444, Appendix, N.4 (D.C. Cir. 1974).

16. "The Senate and House of Representatives [of the 80th Congress] adjourned on June 20, 1948, under a 'conditional final adjournment' resolution, H. Con. Res. 218, 94 Cong. Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a **sine die adjournment,** not an intrasession adjournment. On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President **pocket vetoed 14 bills** presented to him after the adjournment of June 20, 1948." **Kennedy v. Sampson,** 511 F.2d 430, 444, Appendix, N.5 (D.C.Cir. 1974).

17. "[T]he **determinative question** in reference to an 'adjournment is not whether it is a **final adjournment** of Congress or an **interim adjournment,** such as an adjournment of the first session, but whether it ... prevents the President from returning the bill to the house in which it originated within the time allowed." **The Pocket Veto Case, Oskanogan v. United States,** 279 U.S. 655, 681,

73 L.Ed. 894, 49 S.Ct. 463 (1929).

18. An enrolled bill is to be the identical form as the engrossed bill. 1 U.S.C. § 106.

19. "A bill signed by the Speaker of the House of Representatives and by the President of the Senate, presented to and approved by the President of the United States, and delivered by the letter to the Secretary of State, as an Act of Congress, does not become law of the United States if it had not in fact been passed by Congress..." **Field v. Clark**, 143 U.S. 649, 36 L.Ed. 294, 12 S.Ct. 495 (1892); **Mistretta v. United States**, 488 U.S. 361, 381, 102 L.Ed.2d 714, 109 S.Ct. 647 (1989). Congress may not control execution of laws **except through Article I procedures.**

20. "The Constitution of the United States is the Supreme Law of the Land and binds every forum whether it derives its authority from a state or from the United States." **Cook v. Moffat & Curtis**, 46 U.S. 295, 12 L.Ed 159 (1847); **Dodge v. Woolsey**, 59 U.S. 331, 15 L.Ed. 401 (1855); **Ex Parte Siebold**, 100 U.S. 371, 25 L.Ed. 717 (1879).

21. "The words used in the constitution are to be taken in their natural and obvious sense. **Martin Fairfax v. Hunter**, 14 U.S. 304, 4 L.Ed. 97, 1 Wheat 304, 326 (1814), and are to be given the meaning they have in common use unless there are very strong reasons to the contrary, **Tennessee v. Whitworth**, 117 U.S. 139, 147." **Patton v. United States**, 281 U.S. 276, 74 L.Ed. 854, 50 S.Ct. 253 (1930).

22. "[T]he rule, springing from the nature and limits of the jurisdictional power of the United States is **inflexible and without exception**, which requires the court on its own Petition, to deny its jurisdiction, and in the exercise of its appellate power, that all other courts of the United States in all cases where such jurisdiction does not affirmatively appear on the record." **Mansfield, C. & L.M.R. Co. v. Swan**, 111 U.S. 379, 382, 28 L.Ed. 462, 4 S.Ct. 510 (1884).

23. **Without jurisdiction, the power of the court is invalid.** Hanford v. Davies, 163 U.S. 273, 41 L.Ed. 147, 16 S.Ct. 1051 (1896); Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed 832 (1947).

24. A charge of crime **must have** <u>clear</u> legislative basis. United States v. Smull, 236 U.S. 405, 59 L.Ed. 641, 35 S.Ct. 349 (1915).

25. "No stipulation by an executive official purporting to operate under a statute and a party affected by the official's actions can bring that statute into existence, even for purposes of a judicial decision as to its construction." **Independent Insurance Agents of America, Inc. v. Clarke,** 965 F.2d 1077, 1078 (D.C.Cir. 1992). **Nullum Crimen, Sine Lege, Nulla Poena, Sine Lege.**

26. "It is emphatically the duty of the judicial department to say what the law is." **Marbury v. Madison,** 5 U.S. at 177.

27. Judicial intervention is appropriate "when the failure of Congress to adhere to its own rules implicates constitutional rights." **Metzenbaum v. Federal Energy Regulatory Commission,** 673 F.2d 1282, 1287 (D.C.Cir. 1982).

28. The requirement that a court have jurisdiction over the person **before rendering judgement** is rested in Due Process and is a basic requirement that must be satisfied before a valid judgement, can be had of enforced. **Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinea,** 456 U.S. 694, [702], 72 L.Ed.2d 492, 102 S.Ct. 2099 (1982). That requirement stems from article III of the constitution. If the court lacked jurisdiction, the judgement is invalid.

29. "If the law which defines the offense and prescribes its punishment, **is void,** the court was without jurisdiction, and the prisoner must be discharged." **Ex Parte Yarborough,** 110 U.S. 651, 654, 4 S.Ct. 152, 28 L.Ed. 274 (1884); In re Ayers, 123 U.S. 443, 31 L.Ed 216, 8 S.Ct. 164 (1887); **Fay v. Noia,** 372 U.S. 391, 414, 423, 9 L.Ed.2d 837, 83 S.Ct. 822 (1963); **Ex Parte Siebold,** 100 U.S. 371, 2 L.Ed. 717 (1879)(an unconstitutional act is **no law** at all, and **no court** has a

right to imprison a citizen who has violated no law, such restraint even if
exercised under the guise and form of law, is as **subversive of the right of the
citizen** as if it were exercised by a person not clothed without authority).

30. "Where there is clearly no jurisdiction over the subject matter [,] any
authority exercised is a **usurped authority** and for the exercise of such authority
when the want of jurisdiction is known to the judge, no excuse is permissible."
**Bradley v. Fisher**, 80 U.S. 335, 351-52, 20 L.Ed. 646 (1871).

31. "Even a minimal amount of additional time in prison has Constitutional
significance." **Glover v. United States**, 531 U.S. 198, 203, 121 S.Ct. 696, 148
L.Ed.2d 604 (2001).

Defendant has now judicially noticed the facts and the law which establishes
as a matter of law that Public Law 80-773, 28 U.S.C. §§ 2255, 2241, 2244, and
Public Law 80-772 and 18 U.S.C. § 3231 were never enacted into positive law, are
unconstitutional on their face, and are null and void ab initio.
Petitioner/Plaintiff now requests a **directed verdict** on the facts and law and an
order for dismissal of indictment.

**N.    Issue One: Petitioner Committed No Crime Since Public Law 80-772, 18 USC §§
3231 are Unconstitutional On Their Face and Void Ab Initio. Nullum Crimen, Sine
Sine Lege, Nullum Poena, Sine Lege**

**1. Petitioner requests the court to take judicial notice of the facts herein
from the Congressional Record which establishes the invalidity of Public Law 80-
772.**

Research shows that the bill on federal crimes and criminal procedure, which
later became Public Law 80-772, was first introduced in the house of
Representatives as H.R. 2200 during the 79th Congress, passed the House
unanimously and was referred to the Senate Committee on the Judiciary on July 16,
1946, in the Second Session of the 79th Congress, but **never passed** the Senate and
**died** when the 79th Congress **adjourned sine die. 92 Congressional Record 9122, 9067
(July 16, 1946).**

A similar bill, entitled "Crimes and Criminal Procedure," was then reintroduced as **H.R.3190** during the First Session of the 80th Congress. The bill (with some amendments) passed the House 38-to-6 on May 12, 1947, and was referred to the Senate Committee on the Judiciary the next day, in the **First Session** of the 80th Congress, 93 Con. Rec. 5048-5049 (May 12, 1947), 5121 (May 13, 1947). The Senate did not take up the bill prior to he July 27, 1947 (conditional) intersession adjournment, in accordance with S.Con.Res 33, 93 Cong. Rec. 10439, 10522 (July 26, 1947). That adjournment was, in effect, a sine die adjournment. **Kennedy v. Sampson**, 511 F.2d 430, 444, Appendix, N.4. The sine die adjournment was further confined because the President pocket vetoed **19 bills** presented to him after the adjournment of July 27, 1947, which could only be done if Congress, by its sine die adjournment, prevented their return. [20] Upon President Truman's proclamation, Congress reconvened on November 17, 1947, and the First Session of the 80th Congress again adjourned **sine die** on December 19, 1947, **without the Senate passing H.R. 3190**. **Kennedy v. Sampson**, 511 F.2d at 444, Appendix, N.4 (1974). The adjournment sine die can be confirmed by Congress's declaration as found in the statues at large. [21]

Again, the Senate did not take it up prior to the July 27, 1947 (conditional) intersession adjournment, in accordance with S.Con.Res. 33, Cong.Rec. 10439, 10522

---

[20]  **The Pocket Veto Case**, 279 US 655, 680-85 (1929).

[21]  "The Senate and the house of Representatives [of the 80th Congress] adjourned on July 27, 1947, under a 'conditional final adjournment' resolution, H. Con. Res. 33; 93 Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948 unless recalled into session earlier by specified Senate and House leaders. **In effect, the adjournment was a sine die adjournment, not an intrasession adjournment.** On November 17, 1947, Congress convened pursuant to a proclamation of President Truman and **adjourned sine die** on December 19. 1947. The President **pocket vetoed 19 bills** presented to him after adjournment of July 27, 1947." **Kennedy v. Sampson**, 511 F.2d 430, 444, Appendix, N.4 (D.C.Cir. 1974).

(July 26, 1947). Upon President Truman's **proclamation**, Congress reconvened on November 17, 1947, and the First Session of the 80th Congress **adjourned sine die** on December 19, 1947, **without the Senate passing H.R. 3190.** Kennedy v. Sampson, 511 F.2d 430, 444, n.4 (D.C.Cir. 1974).

H.R. 3190, which die twice upon the sine die adjournmnets of Congress in 1947, was **not reintroduced** in the House again at anytime in 1948 during the Second Session of the 80th Congress, 94 Cong.Rec. 568 (1948), but mysteriously, near the end of the Second Session of the 80th Congress, on June 14, 1948, H.R. 3190, with Judiciary Committee amendments (per S.Rept.No. 1620), surfaced in the Senate **as if it had never died** with the sine die adjournment in 1947 or as if it was magically passed once again by the House in 1948. **94 Cong. Rec. 8075 (June 14, 1948).**

The Senate promptly passed the amended H.R. 3190 on June 18, 1948, and sent it back to the House, expecting that the House would adopt the amended bill. 94 Cong. Rec. 8721-22 (June 18, 1948). The House then **"concurred" in the amendments** that same day (June 18, 1948) **but never voted** on the amended bill. 94 Cong. Rec. 8864-65 (June 18, 1948).

In accordance with **H.Con.Res. 218,** the Second Session of the 80th Congress (conditionally) **adjourned sine die** on June 20, 1948, with **H.R. 3190 still to be signed** by the Speaker of the House and the President pro tempore of the Senate, **after** the adjournment by H.Con.Res. 219. President Truman **pocket vetoed 14 bills** after the June 20, 1948 sine die adjournmnet of Congress, which would only be done because Congress, by their sine die adjournment, prevented their return. [22] **Kennedy v. Sampson,** 511 F.2d at 444, n.5, 94 Cong.Rec. 9349 (June 19, 1948).

---

[22] **The Pocket Veto Case,** 279 US 655, 680-85 (1929).

It was **only after this** (conditional) final adjournment of the Second session of the 80th Congress, and as authorized by H.Con.Res. 219, that the Speaker and the President pro tempore signed the enrolled H.R. 3190 and presented it to President Truman on June 23, 1948, for the President to sign the enrolled bill into law on **June 25, 1948. 94 Cong.Rec. 9354,9365,9367**; see also **94 Cong.Rec. D557 (Daily Digest).**

At the time H.R. 3190 was signed by the Speaker of the House and the President pro tempore of the Senate, the 80th Congress **was not in open session** but it was fully (but conditionally) **adjourned sine die. Kennedy,** 511 F.2d at 444, n.5.

The face of the engrossed bill as signed by the 80th Congress shows that the engrossed bill was passed and signed in the 80th Congress, 1947 Session, by the House of Representatives on July 7, 1947. However, the enrolled bill, which placed Public Law 80-773 into law, was **altered** from the engrossed bill (which showed a date of enrollment of July 7, 1947 in the First Session of the 80th Congress) to **"make it appear"** that it passed both houses of Congress in 1948, in the Second Session of Congress, thus rendering it a fraud, forgery and unconstitutional. See **Records of National Archives, engrossed bill, enrolled bill, Public Law 80-773).**

To recap the steps, first the House only passed H.R. 3190 in the First Session of the 80th Congress (in 1947) and it died because the Senate did not pass it until the First Session **adjourned sine die twice.** President Truman pocket vetoed 19 bills during the session. Secondly, , the House never voted on and never passed H.R. 3190 in the Second Session of the 80th Congress (in 1948) before it was taken up in and was passed by the Senate. See **94 Cong.Rec. D556-557 for a summary.** Thirdly, the Senate only passed an amended bill in the Second Session of the 80th Congress, and the House later concurred in the amendments, but the

records show no house vote on the amended bill (just on the amendments). Fourthly, despite the potentially questionable authorization of H.Con.Res. 219, the (questionably) enrolled bill was signed by the Speaker of the House and the President pro tempore of the Senate **after the 80th Congress adjourned sine die, and not in open session**, rendering the enactment again invalid. **94 Cong.Rec. 9354, 9365,9367, see also 94 Cong.Rec. D557 (Daily Digest), Kennedy**, 511 F.2d at 444, n.5. And finally, the enrolled bill, which was signed by President Truman, was **altered from the engrossed bill** to make it appear that H.R. 3190 came through the House of Representatives in the Second Session of the 80th Congress (in 1948), instead of the First Session (in 1947), rendering it a **fraud a forgery** and invalid. [23]

A further problem with the enactment of Public Law 80-772 derives from the enactment clause which accompanies the bill. **1 U.S.C. § 101 (1947)** specifically sets forth the **required form** of the enacting clause of all Acts of Congress to make them Constitutional: "The enacting clause of all Acts of Congress shall be in the following form: 'Be it enacted by the Senate and House of Representatives of the United States of America **in Congress assembled.**'" However Public Law 80-772 did not meet the elements of 1 U.S.C. § 101, was not properly passed by both houses, was **not** enacted in Congress assembled, as it was "signed into law" by the president pro tempore of the Senate and the Speaker of the House **only after Congress adjourned sine die** on June 20, 1948. **Kennedy**, 511 F.2d at 444, n.5, 94 Cong.Rec. 9349 (June 19, 1948). Therefore, the enactment clause is invalid on its face and without a proper enactment clause, Public Law 80-772 was never passed into positive law, is unconstitutional on its face, and is null and void

---

[23]  Petitioner requests that the court take judicial notice of the "engrossed" and "enrolled" bills of Title 18 from the 80th Congress in the National Archives, which establishes the forgery.

ab initio.

The main problems with the enactment of Title 18 of the United States Code by the 80th Congress are the following:

(1) The two houses of the Congress passed the same numbered bill, one house in the first session of Congress and the second house in the second session of the same Congress (the two sessions being separated by a **sine die** intersession adjournment). Specifically, it is unconstitutional (or illegal) for the House of Representatives to pass H.R. 3190 in 1947 (in the First Session of the 80th Congress) and for the Senate to pass it in 1948 (in the Second Session of the 80th Congress), without the House passing it once again in the Second Session). [24]

(2) An H.R. bill cannot be first passed by the Senate before it is passed by the House of Representatives. Specifically, the fact that the House of Representatives concurred in the Senate amendments (on June 18, 1948), after the Senate passed the amended H.R. 3190, did not cure the problem.

(3) It is unconstitutional for the Speaker of the House of Representatives and the President pro tempore of the Senate to sign an enrolled bill after the final adjournment of the Congress (not in open session). Specifically, it is unconstitutional for the Speaker of the House and the President pro tempore of the Senate to sign H.R. 3190 on June 22, and June 23, 1948, respectively, after the final adjournment of the 80th Congress on June 20, 1948.

(4) The above referenced (3) is unconstitutional even in light of the House Concurrent Resolution 219, which both houses passed on June 19, 1948, to authorize (3), because president Truman never had to sign H.Con.Res. 219. [25]

---

[24] No vote occured by the House in 1948, therefore, no law exists.

(5)   The above referenced (3) is also illegal under 1 U.S.C. § 101, which states "BE IT ENACTED BY THE SENATE AND THE HOUSE OF REPRESENTATIVES OF THE UNITED STATES OF AMERICA IN CONGRESS ASSEMBLED." Despite the fact that both houses of the 80th Congress passed H.Con.Res. 219 to authorize the above-referenced (3) because a House Concurrent Resolution does not require the president's signature and, thus, cannot override (invalidate) 1 U.S.C. § 101.

(6)   The House of Representatives never voted on the amended bill that the Senate passed on June 18, 1948. Thus, even if we assume that there is no problem with the House of Representatives passing H.R. 3190 in the First Session (1947) of the 80th Congress, the problem is still not solved because the Senate amended the bill that the House had passed in 1947. Thus, the House and Senate passed different bills, in violation of the Presentment Clause.

(7)   The enrolled bill was altered from the engrossed bill to make it appear that the bill passed both Houses of Congress in the second session of the 80th Congress, rendering it a fraud, a forgery and invalid. Specifically, the enrolled bill must be the same as the engrossed bill, to establish that both houses passed the same bill. The 80t Congress decided to violate the Separation of Powers Doctrine and falsify the dates on the enrolled bill, rendering it a fraud, a forgery and void.

---

[25]  Although it never became an issue, theoretically, the power that H.Con.Res. 219 gave to the Speaker of the House and to the president pro tempore of the Senate (both Republicans) could have been used to delay the submission of the enrolled bills to President Truman (a Democrat) until, for instance, Truman took a foreign trip (to visit, say European countries). This hypothetical scenario may have resulted in a constitutional crisis (separation of powers) because the procedure could have been used to bypass the President and to get some of the enrolled bills, which President Truman would have have enacted by getting them signed by the Republican House Speaker, Joseph W. Martin, who would have acted in lieu of the President because there was no Vive-President between 1945 and 1949, until the inauguration of Alban W. Barkley, who was elected as Truman's Vice-President in the 1948 elections.

No question exists that the law was not passed in 1947 by both Houses. That is a matter of Public Record. Therefore, since the bill was not passed in 1947 and according to the House of Representatives it was not passed in 1948, it is not a law but a nullity. Furthermore, since the senate amended the bill in 1948, even if it was still valid in 1948, a different bill passed the House than passed the Senate, in violation of Article I, Section 7 of the Constitution, the Presentment Clause, again rendering it a nullity.

### I. Since P.L. 80-772 is Unconstitutional, 18 U.S.C. § 3231 Is Also Unconstitutional

The Constitutional validity of 18 U.S.C. § 3231, which gives the district courts their original jurisdiction **to prosecute any crimes** against the laws of the United States, is also directly dependent on the validity or the invalidity of Public Law 80-772. [26]

18 U.S.C. § 3231 was introduced in the First Session of the 80th Congress as part of Public Law 80-772 and H.R. 3190. The report of the House Committee on the Judiciary (80th Congress, 1st Session) stated: "This section [3231] was formed by combining sections 546 and 547 of Title 18, U.S.C. 1940 ed. with Section 588d of Title 12 U.S.C., Banks and Banking, with no change of substance". See **H.R. Rep. No. 304, 80th Congress, 1st Session, 100 app. (1947).**

Thus the original proposed House revision of the new 18 U.S.C. § 3231 was introduced in 1947 as part of the faulty H.R. 3190. However, it is established by judicially noticed facts herein that H.R. 3190 **died sine die twice** in the First Session of the 80th Congress when it was not passed by the Senate. The dead bill,

---

[26]  "The district court of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." (June 25, 1948, ch. 645, 62 Stat. 826). 18 U.S.C. § 3231.

H.R. 3190, which included the re-codification of 18 U.S.C. § 3231, was then amended in the Senate, in the Second Session of the 80th Congress without being first **re-introduced** into the House (see supra, Public Law 80-772) to read as it now exists. See **S.rep. 1620, 80th Congress, 2d Session 2430 (1948)**. The Senate version, as it presently exists, established the exclusivity of district court **jurisdiction over all federal crimes.**

Since the passage of 18 U.S.C. § 3231 is intertwined and incorporated into the passage of H.R. 3190 and public Law 80-772, 18 U.S.C. § 3231 **is unconstitutional on its face**, is supported with no valid enactment clause, and is therefore **null and void ab initio**. Without a valid 18 U.S.C. § 3231, the courts could only obtain their jurisdiction to prosecute Petitioner, pursuant to 18 U.S.C. § 546 and 547 (1940),and the court must revert back to that enactment based on the invalidity of 18 U.S.C. § 3231. The plain language of 18 U.S.C. § 546 states: "The crimes and offenses **defined in this title** shall be cognizable in the district courts of the United States, as prescribed in Section 41 of Title 28.**(Mar. 4, 1909, ch. 321, § 340, 35 Stat. 1153, Mar. 3, 1911, ch. 231, § 291, 36 Stat. 1167).** [27] Therefore, the court's limited jurisdiction to prosecute crimes begins and ends with the offenses defined in that title.

The plain language of 18 U.S.C. § 546 gave the district court jurisdiction over the statutes only in **"this title"**. Those statutes contain **different penalty provisions** than the 1948 enactment. **Petitioner was not indicted pursuant to those statutes.** Petitioner was not given **fair warning** related to those statutes. [28]

---

[27]  Petitioner requests the court to take judicial notice of 18 U.S.C. § 546 (1940). The offenses defined in that title carried different penalty provisions than the 1948 enactment.

[28] **Fair warning doctrine** invokes due process rights and requires that criminal statute at issue be sufficiently definite to notify persons of reasonable intelligence that their planned conduct is criminal. **United States v. Nevers**, 7 F.3d 59 (5th Cir. 1993). See **United States ex rel. J. Clark v. Anderson**, 502 F.2d

With no district court jurisdiction to prosecute crimes, the district court had no jurisdiction to indict, retain, or sentence Petitioner, and thus his indictment and conviction is null and void ab initio.

## II. The Prior Enactment Does Not Provide the Court Jurisdiction

A district court **must** obtain its jurisdiction **exclusively** from the Constitution and statutes of the United States. Without a valid statute, it has no jurisdiction **except** to dismiss the cause. 18 U.S.C. § 3231 is unconstitutional on its face because it is part of the unconstitutional and fraudulent enactment of H.R. 3190 and Public Law 80-772. 18 U.S.C. § 546, the prior 1940 enactment, defined **different crimes** and carried different penalty provisions, gave the court jurisdiction to prosecute crimes, but jurisdiction only over the crimes in that title. Defendant was not indicted based on any of the crimes in that title, and therefore, his indictment is **null and void**. Without a valid indictment, no jurisdiction exists to continue Petitioner's illegal incarceration. **Nullum Crimen, Sine Lege, Nulla Poena, Sine Lege. NO LAW, NO CRIME.**

In **United States ex. rel. Clark v. Anderson**, 502 F.2d 1080, 1081-82 (3d Cir. 1974), the court found that at the time the offense occurred and the accused was indicted, "the state of Delaware had published and was holding out the new [statute] as its only prescription of such misconduct as the indictment charged." The crime was also not a crime at common law. The court ruled the new statute unconstitutional. **And by definition, an unconstitutional statute is one that fails to give fair notice that particular conduct is prescribed by the state.** See **United States v. Harris**, 1954, 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808; **Connally**

---

1080 (3d Cir. 1974)(The notice requirements of Due Process would not be permit a state, after ruling one of its criminal statutes was overly vague, to apply that statute's superseding predecessor statute in the very case which ruled the successor statute unconstitutional).

v. General Construction Co., 1926, 269 U.S. 385, 391, 70 L.Ed. 322, 46 S.Ct. 126.
Thus, the state's own interpretation of the new statute and its rejection of that
section as a statutory basis for Clark's prosecution caused the court to hold that
the new statute did not provide constitutionally adequate notice.

The **Clark** court determined that the defendant's conviction **could be upheld
only if** the old statute, the supercession of which had been legislatively declared
and publicly announced, could continue to serve as notice of the criminality of
defendant's conduct. In order to reach that conclusion, the court decided that
one would have to reason. First, that the new statute on its face gave adequate
notice of its own invalidity, and second, that the public, this informed, was the
put on further notice that the officially announced statutory repeal or
supercession of theold statute was legally ineffective. Id.

The court concluded that such reasoning was "too tortured and too far
removed" from reality to satisfy the due process requirement that, at the time
of the alleged offense, the accused shall have been on notice that his conduct
was proscribed by the criminal law. The court could have even surmount the first
hurdle that the new statute could serve as notice of its own invalidity. Without
that notice, no occasion was available to consider the old statute as possibly
relevant.

As in the **Clark** case, and its Supreme Court precedents, to meet Due Process,
Public Law 80-772 and 18 U.S.C. § 3231 would have to give adequate public notice
on their faces of their own invalidity and the public would have to have been put
on further notice that the officially announced statutory repeal or supercession
of the old statutes was legally effective. The court cannot even reach the first
hurdle, much less the second one. The court obtained its jurisdiction to prosecute
crimes pursuant to 18 U.S.C. § 3231, without proper notice of the invalidity of
the statue. Petitioner's indictment and conviction cannot be upheld, and the court

has only one choice, to order dismissal of defendant's indictment and conviction ab initio.

According to standing precedent, this court had absolutely no jurisdiction to prosecute Petitioner under either 18 U.S.C. § 3231 or the prior enactment. It's conclusory argument is incorrect as a matter of law.

O.   **Issue Two**: Petitioner Has a Right to Bring This Petition Pursuant to The Original Habeas Corpus Because Public Law 80-773, 28 U.S.C. § 2255 and 28 U.S.C. § 2241 (1948) are Unconstitutional on Their Face and Void Ab Initio

1. Procedural History of Public Law 80-773 and 28 U.S.C. § 2255

Petitioner takes judicial notice of the facts herein from the Congressional Record related to Public Law 80-773.

The history and purpose of 28 U.S.C. § 2255 and its relationship to the habeas remedy, which is codified in § 2241, is discussed in **United States v. Hayman**, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). Section 2255 was enacted in 1948 "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." 342 U.S. at 219, 72 S.Ct. at 272. The practical difficulties with habeas remedy were "serious administrative problems" resulting from the requirement that those proceedings be brought and decided in the district of incarceration. Id. at 210-19, 72 S.Ct. at 268-72.

Section 2255 began as a bill proposed by the committee on habeas procedures of the Judicial Conference of the United States. See **Report of the Judicial Conference of Senior Circuit Judges, September Session, 1943, p.25 (referring to the bill as statute "A")**. The Judicial Conference recommended the bill's adoption at the September 1943 session and subsequently reaffirmed that recommendation during it's September sessions of 1944 and 1945. See **Id. at 22; Report of The Judicial Conference of Senior Circuit Judges, September Session, 1945, p.18**. The bill was submitted to the House of Representatives as H.R. 4233 on October 1, 1945 and to the Senate as S.1451 on October 3, 1945, during the

First Session of the 79th Congress. See **91 Cong. Rec. 9210 (1945)(H.R. 4233); 91 Cong. Rec. 9295 (1945)(S.1451).**

During the First Session of the 79th Congress, neither chamber acted on the bill. It was **reintroduced** in the House during the Second Session as H.R. 6723, [29] but no action was taken on it then, either, either, and it, therefore died. See **92 Cong. Rec. 6617 (1946).**

During the 80th Congress, the bill was re-introduced in the Senate as S.20. See **94 Cong. Rec. 7709-10 (1948).** The Senate passed S.20, but it died when the House took no action on it. See **Brendan W. Randall, Comment, United States v. Cooper, The Writ of Error Coram Nobis and the Morgan Footnote Paradox, 74 Minn. L. Rev. 1063, 1106 n. 71 (1990)(Citing the Congressional Record).**

Meanwhile, Congress was moving forward with a comprehensive revision of Title 28, the Judicial Code, including the habeas corpus chapter. The revision was embodied in H.R. 3214. H.R. 3214 was introduced in the House of Representatives on April 25, 1947, in the First Session of the 80th Congress. 93 Cong. Rec. 8297 (1947). It passes the House on July 7, 1947 and was engrossed in the 1947 session of the 80th Congress. The Senate did not take up the bill prior to the July 27, 1947 (conditional) intersession adjournment, in accordance with S.Con.Res. 33. 93 Cong. Rec. 10439, 10522 (July 26, 1947). That adjournment was, in effect, a **sine die adjournmnet. Kennedy v. Sampson,** 511 F.2d 430, 444, Appendix, N.4. The sine die adjournment was further confirmed because the President **pocket vetoed 19 bills** presented to him after the adjournment of July 27, 1947, which can only be done when the adjournment of Congress sine die prevents the return of the bills

---

[29] The fact that the bill was re-introduced in the Second Session of the 79th Congress as a new bill with a different number is an acknowledgement by Congress that **when a bill dies sine die in the first session of Congress, it must be reintroduced as new legislation by that House.**

to Congress. [30]

**Upon President Truman's proclamation**, Congress reconvened on November 17, 1947, and the First Session of the 80th Congress **adjourned sine die** on December 19, 1947, **without the Senate passing H.R. 3214. Kennedy v. Sampson**, 511 F.2d at 444, Appendix, N.4 (1974). [31]

H.R. 3214, which **died twice** upon the **sine die** adjournment of Congress in 1947, was **not reintroduced in the House again** at anytime in 1948 during the Second Session of the 80th Congress, 94 Cong.Rec. (1948), but mysteriously, near the end of the Second Session of the 80th Congress, on June 9, 1948, H.R. 3214, the dead bill from the first session, surfaced with amendments in the Senate **as if it had never died** with the sine die adjournment in 1947 **or as if it was passed once again** by the House in 1948. **(S.Rept.1559), 94 Cong.Rec. 7500 (1948)**. The bill was amended and passed the Senate on June 12, 1948. **(4 Cong.Rec. 7927-7930 (1948)**. A Petition to reconsider was entered on June 12, 1948. **94 Cong.Rec. 7927-7930 (1948)**. That Petition was withdrawn on June 15, 1948. **94 Cong.Rec. 8297 (1948)**. The House then concurred in the Senate amendments on June 16, 1948, but did not

---

[30]  **The Pocket Veto Case, 279 US 655, 680-685 (1929).**

[31]  "The Senate and the House of Representatives [of the 80th Congress] adjourned on July 27, 1947, under a 'conditional final adjournment' resolution, H.Con.Res. 33; 93 Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until Jan. 2, 1948 unless recalled into session earlier by specified Senate and House leaders. **In effect, the adjournment was a sine die adjournment, not an interssesion adjournment**. On Nov. 17, 1947, Congress convened pursuant to a proclamation of President Truman and **adjourned sine die** on December 19, 1947. The President **pocket vetoed 19 bills** presented to him after the adjournment of July 27, 1947." **Kennedy v. Sampson**, 511 F.2d 430, 444, Appendix, N.4 (D.C.Cir. 1974). The July 27, 1947 adjournment is a sine die adjournment because it was done for 113 days, far more that the 3 days allowed by the Constitution and supported by the government, President Truman pocket vetoed 19 bills after the adjournment, which can only be done after a sine die adjournment, and President Truman, by proclamation called Congress back into session, thereby ending sine die the prior session. The December 19, 1947 adjournment was declared to be a sine die adjournment by Congress, which can be verified by the Congressional records and Statues at Large.

vote on the amended bill. **94 Cong.Rec. 8498 (1948)**. The bill was examined and signed on June 17, 1948. **94 Cong.Rec. 8540, 8714 (1948)**. The bill was then presented to the President and signed into law on **June 25, 1948** as Public Law 80-773.

In accordance with H.Con.Res. 218, the Second Session of the 80th Congress (conditionally) **adjourned** on **June 20, 1948, sine die**, with H.R. 3214 still to be signed into law after the adjournment by H.Con.Res. 219. **Kennedy v. Sampson**, 511 F.2d at 444, Appendix, N.5 [32], 94 Cong.Rec. 9349 (June 19, 1948). The sine die adjournment is further confirmed because the President **pocket vetoed 14 bills** presented to him after the June 20, 1948 adjournment, which can only be done when the sine die adjournmnet of Congress prevents the return of the bills. [33]

It was only after this (conditional) final adjournment of the Second Session of the 80th Congress, and as authorized by H.Con.Res. 219, that the Speaker of The House and the President pro tempore of the Senate presented Public Law 80-773 to President Truman for his signature (**Omitted in the Record**).

At the time H.R. 3214 was signed into law, the 80th Congress was **not in open sessionb** but it was fully (but conditionally **adjourned sine die. Kennedy**, 511 F.2d at 444, Appendix, N.5.

The face of the engrossed bill as signed by the 80th Congress shows that the engrossed bill was passed and signed in the 80th Congress, 1947 session, by the

---

[32] "The Senate and House of Representatives [of the 80th Congress] adjourned on June 20, 1948, under a "conditional final adjournment" resolution, H.Con.Res. 218, 94 Cong.Rec. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until Dec. 31, 1948, unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a **sine die adjournment**, not an intrasession adjournment. On July 26, 1948, Congress convened pursuant to a proclamation of President Truman. The President **pocket vetoed 14 bills** presented to him after the adjournment of June 20, 1948." **Kennedy v. Sampson**, 511 F.2d 430, 444, Appendix, N.5 (D.C.Cir. 1974).

[33] The Pocket Veto Case, 279 US 655, 680-685 (1929).

House of Representatives on July 7, 1947. However, the enrolled bill, which placed Public Law 80-773 into law, was **altered** from the engrossed bill (which showed a date of enrollment in 1947 in the First Session of the 80th Congress) to **make it appear** that it passed both Houses in 1948 in the Second Session of Congress, thus rendering it a fraud and forgery. See **Records of national Archives, engrossed bill, enrolled bill, Public Law 80-773.**

To recap, the infirmities in the passage of Public Law 80-773 render that it was never enacted into positive law, is unconstitutional on its face, and is null and void ab initio. Initially, H.R. 3214 **died sine die twice** in the First Session of the 80th Congress after it was presented to, but not passed by the Senate. [34] H.R. 3214 passed the House and was enrolled on July 7, 1947. Congress the **adjourned sine die** on July 27, 1947. **Kennedy v. Sampson,** 511 F.2d 430, 444, N.4 (D.C.Cir. 1974). President Truman further confirmed the sine die adjournment when he **pocket vetoed 19 bills** after the July 27 27, 1947 adjournment, which can only be done when a sine die adjournment of Congress prevents the return of the bills. Congress reconvened under Presidential proclamation on Nov. 17, 1947, but **again adjourned sine die** on Dec. 19, 1947. **Kennedy v. Sampson,** 511 F.2d at 444, Appendix, N.4. The Senate did not vote on H.R. 3214 in 1947 before Congress adjourned sine die. The fact of the **two sine die adjournments** in the first session of the 80th Congress are established, well-settled and have been judicially accepted for over 30 years per **Kennedy v. Sampson,** 511 F.2d 430, 444, Appendix, Notes 4 and 5. And the government is estopped from altering those facts.

H.R. 3214 was **not re-introduced** as new legislation in the Second Session of Congress, but mysteriously appeared with amendments in the Senate on June 9, 1948.

---

[34]  Each adjournment of Congress in the first session after the sine die adjournments was for much longer than the 3 days allowed by the Constitution and the position of the Department of Justice. Infra.

The House then concurred in the amendments, but **never voted on the amended bill**. Congress then again adjourned sine die twice in the second session of the 80th Congress on June 20, 1948. **Kennedy v. Sampson**, at 444, Appendix, N.5. Therefore, H?R. 3214 **died sine die twice in the first session** of the 80th Congress in 1947, was not reintroduced as new legislation by the House in the second session of the 80th Congress in 1948, but was taken by the Senate as if it was still valid, was not introduced as a Senate bill, was amended by the Senate, and sent to the House to concur in the amendments. The House in 1948 never voted on the amended bill, whether it was a Senate bill that was sent to the House (the Senate did not treat it as a Senate bill and assign a Senate bill number) or whether it was dead H.R. 3214. Therefore, H.R. 3214, died in the House, in the first session of the 80th Congress in 1947, and thus **did not pass both houses** of Congress.

Public Law 80-773 is further unconstitutional because it has no valid enactment clause. 1 USC § 101 (1947), the enactment clause statute, requires: "The enacting clause of all Acts of Congress shall be in the following form: 'Be it enacted by the Senate **and** House of Representatives of the United States of America in Congress assembled.'" See **1 U.S.C. § 101 (1947)**. Since Public Law 80-773 was not enacted by **both houses in Congress assembled**, it has no valid enactment clause and is unconstitutional on its face.

A final problem with the Constitutionality of Public Law 80-773 relates to the engrossing and enrolling of the bills. 1 U.S.C. § 106 requires that every engrossed bill shall be signed by the Clerk of the House or the Secretary of the Senate and shall be sent to the other house in that form. See **1 USC § 106**. [35]

---

[35]  "Ever bill or joint resolution in each House of Congress shall, when such bill or resolution passes either House, be printed, and such printed copy shall be called the engrossed bill or resolution as the case may be. Said engrossed bill or resolution shall be signed by the clerk of the House or the Secretary of the Senate, and shall be sent to the other House, and **in that form** shall be dealt with **by that house and its officers**, and, if passed, returned signed by said Clerk or

See also **Congress A to Z**, CQ's **Ready Reference Encyclopedia, Congressional Quarterly, Inc., 1414 ssnd Street NW, Washington, DC 20037**, pg.127-28: "Enrolled Bill: The final copy of a bill that has been passed **in identical form** by both the Senate and House of Representatives is known as an enrolled bill. It is certified by the secretary of the Senate or clerk of the House, depending on where the bill originated, and then sent on for signatures of the House Speaker, the Senate president pro tempore, and the president of the United States. An enrolled bill is printed on parchment-type paper." The engrossed bill for HR 3214 in 1947 was **altered** when it surfaced as the enrolled bill in 1948 to make it "appear" to have passed both Houses of Congress in 1948. Therefore, it is a **fraud** a **forgery** and **invalid.**

Since Public Law 80-773, the underlying statute, is unconstitutional on its face, 28 U.S.C. § 2255 (1948) [36] and 28 U.S.C. § 2241, et seq. (1948) [37] whose validity as law is directly intertwined and dependent on the "passage" of Public Law 80-773, are likewise unconstitutional on their face, void ab initio **as a matter of law.** Therefore, petitioner is entitled to use the former habeas remedy, 28 U.S.C. § 451, et seq. (1940) to seek relief from Constitutional violations that deprive him of his liberties.

---

Secretary. When such bill, or joint resolution shall have passed both Houses, it shall be signed by the presiding officers of both Houses and sent to the President of the United States. During the last six days session such engrossing and enrolling of bills and joint resolutions may be done otherwise than as above prescribed, upon the order of Congress by concurrent resolution." 1 USC 106 (July 30, 1947, ch. 388, 61 Stat. 634).

[36] (June 25, 1948, ch.646, 62 Stat. 967; May 24, 1949, ch. 139, § 114, 63 Stat. 105;Pub. L. 104-132, Title I, § 105, Apr. 24, 1996, 110 Stat. 1220.)

[37] (June 25, 1948, ch. 646, 62 Stat. 964; May 24, 1949, ch. 139, § 112, 63 Stat. 105;Pub. L. 89-590, Sept. 19, 1966, 80 Stat. 811.)

A review of the Statutes at Large for Public Law 80-773 shows no savings clause included in Public Law 80-773. Even if a savings clause was listed, it would have been part of the invalid passage of Public Law 80-773, which was never enacted into positive law and was unconstitutional on its face, and would be likewise void ab initio.

In summary, Public Law 80-773, and therefore, 28 U.S.C. § 2255 and 28 U.S.C. § 2241, were never enacted into positive law, are unconstitutional on their face, and are null and void ab initio. Those facts are judicially noticed herein and proven to the court beyond a reasonable doubt.

The main problems with the enactment of Title 28 of the United States Code by the 80th Congress are the following:

(1)  The two houses of Congress passed the same enumerated bill, one house in the first session of Congress and the second house in the second session of the same Congress (the two sessions being separated by a **sine die** intersession adjournment). Specifically, it is unconstitutional (or illegal) for the House of Representatives to pass H.R. 3214 in 1947 (in the First Session of the 80th Congress) and for the Senate to pass it in 1948 (in the Second Session of the 80th Congress), without the House passing it once again in the Second Session). [38]

(2)  An H.R. bill cannot be first passed by the Senate before it is passed by the House of Representatives. Specifically, the fact that the House of Representatives concurred in the Senate amendments (on June 16, 1948), after the Senate passed the amended H.R. 3214 did not cure the problem.

(3)  It is unconstitutional for the president to sign an enrolled bill after the final adjournment of the Congress (not in open session) which is a sine die

---

[38]  No vote occurred by the House in 1948, therefore, no law exists.

adjournment, and when he pocket vetoes 14 bills. Specifically, it is unconstitutional for the President to sign H.R. 3214 into law after the final sine die adjournment of the 80th Congress on June 20, 1948 when he pocket vetoed the 14 bills.

(4)   The above referenced (3) is unconstitutional even in light of the House Concurrent Resolution 219, which both houses passed on June 19, 1948, to authorize (3), because President Truman never had to sign H.Con.Res.219. [39]

(5)   The above-referenced (3) is also illegal under 1 U.S.C. § 101, which states "BE ENACTED BY THE SENATE AND HOUSE OF REPRESENTATIVES OF THE UNITED STATES OF AMERICA IN CONGRESS ASSEMBLED." Despite the fact that both houses of the 80th Congress passed H.Con.Res. 219 to authorize the above referenced (3) because a House Concurrent Resolution does not require the President's signature, and thus cannot override (invalidate) 1 U.S.C. § 101.

(6)   The House of Representatives never voted on the amended bill that the Senate passed on June 12, 1948. Thus, even if we assume that there is no problem with the House of Representatives passing H.R. 3214 in the First Session (1947) of the 80th Congress, the problem is still not solved because the Senate amended the bill that the House had passed in 1947. Thus, the House and Senate passed different bills, in violation of the Presentment Clause.

(7)   The enrolled bill was altered from the engrossed bill to make it appear that the bill passed both Houses of Congress in the Second Session of the 80th Congress, rendering it a fraud a forgery and invalid. Specifically, the enrolled bill must be the same as the engrossed bill, to establish that both

---

[39]   Although it never became an issue, theoretically, the power that H.Con.Res. 219 gave to the Speaker of the House and to the President pro tempore of the Senate (both Republicans) could have been used to delay the submission of the enrolled bills to President Truman (a Democrat) until for instance, Truman took a foreign trip (to visit, say some European countries). This hypothetical scenario

houses passed the same bill. The 80th Congress decided to violate the Separation of Powers Doctrine and falsify the dates on the enrolled bill, rendering it a fraud, a forgery and void.

No question exists that the law was not passed in 1947 by both Houses. That is a matter of Public Record. Therefore, since the bill was not passed in 1947 and according to the House of Representatives it was not passed in 1948, it is not a law but a nullity. Furthermore, since the Senate amended the bill in 1948, even if it was still valid in 1948, a different bill passed the House than passed the Senate, in violation of Article I, § 7 of the Constitution, the Presentment Clause, again rendering it a nullity.

## P. Issue Three: 21 U.S.C. §§ 841 and 846 Are Invalid as Criminal Law

The statute, 21 U.S.C. § 841, is unconstitutional on its face because Pub. Law 98-473 (H.J.Res. 648, enacted in October 12, 1984, as Comprehensive Crime Control Act of 1984), the version of 21 U.S.C. § 841 enacted to make drug laws more severe, was repealed by Pub. Law 99-570 (H.R. 5484, enacted on October 27, 1986, as Anti-Drug Abuse Act of 1986), and was never enacted into law again. Since the penalty provisions of 21 U.S.C. § 841 are not law, then 21 U.S.C. § 846 does not have a penalty provision. Without a penalty provision, Petitioner could not possibly have been charged with a crime pursuant to 21 U.S.C. §§ 841 and 846. Therefore, Petitioner's indictment is fatally defective and null an void.

Amendment by section 224(a)(5) of Pub. Law 98-473, deleting the last sentence

---

may have resulted in a constitutional crisis (separation of powers) because the procedure could have been used to bypass the President and to get some of the enrolled bills, which President Truman would have enacted by getting them signed by the Republican House Speaker, Joseph W. Martin, who would have acted in lieu of the President because there was no Vice-President between 1945 and 1949, until the inauguration of Alban W. Barkley, who was elected as Truman's Vice-President in the 1948 elections.

of subsection (b)(5), did not take into account repeal of such subsection (b)(5) by section 592(5) of Pub. Law 98-473 and addition of a new subsection (b)(50) by section 502(b)(6) of Public Law 98-473, thereby resulting in the deletion of a provision of subsection (b)(5) which had previously been repealed. Section 224(a)(5) of Pub. Law 98-473 was repealed by section 10059(a)(2) of Pub. Law 99-570.

Under the effective and applicability provisions of the repeal, sections 224(a)(1),(2),(3), and (5), of Pub. Law 98-473 were repealed by section 1005(a)(92) of Pub. Law 99-570.

Under the effective and applicability provisions of the repeal, sections 224(a)(1),(2),(3), and (5), of Pub. Law 98-473 were repealed by section 1005(a)(2) of Pub. Law 99-570. Such provisions of section 224(a) of Pub. Law 98-473, which were taken effect November 1, 1987, as a result of the repeal, were never executed to text of section, as shown by the United States Code Annotated, 21 U.S.C. § 841 legislative history, and Fed.R.Crim.P. 21 U.S.C. § 841, Effective and Applicability Provisions of Repeal.

> Unfortunately, when the CSA [Controlled Substance Act] was reproduced in the United States Code, the margin notes were converted into subsection headings by the codification committee, but have never been officially adopted by the Congress, and therefore, do not have the force of law. See **U.S.C. at vii (1994 & Supp. V 1999)(noting that Title 21 has never been officially codified).**

See **United States v. Vasquez**, 271 F.3d 93, 111 (3rd Cir. 2001)(Becker, C.J., concurring). See also **U.S. v. Gonzalez**, 420 F.3d 122-124 (2nd Cir. 2005).

Also, by consulting **84 Stat. 1242-1296, October 27, 1970**, styled as Controlled Substance Act, which allegedly created 21 U.S.C. §§801-960 of the United States Code. By consulting the notes and parallel tables of United States Code, **Title 1 § 204** it is found that Title 21 of the United States Code has never been promulgated into law, thus a misapplication of the Legislative Jurisdiction of the Federal Congress. See **EXHIBIT "A"**.

See also **Schmitt v. City of Detroit**, 395 F.3d 327, 330 (6th Cir. 2005)(First, it is the Statutes at Large that "shall be legal evidence of laws." 1 U.S.C. § 112. By contrast, the United States Code shall "establish prima facie the laws of the United States." 1 U.S.C. 204(a).

It is by consulting **25 Am Jur 2d. § 33**, where it is found that the provisions of the act cited above, has lawful application at ports of 'entry' and 'exit' from the United States over those who are either 'entering' or 'leaving' the 'United States.'

In order for provision(s) of the above-cited act to possess jurisdiction and applicability over prohibited 'drug acts' within the territorial borders of one of the several sovereign states, the Onus Probandi would be upon the Prosecuting Party [United States Attorney], when prosecuting in the name of the United States. See for reference **28 U.S.C. § 547** to evidence that such alleged prohibitive conduct was in fact in violation of the federal 'Interstate Commerce' statute, viz **18 U.S.C. § 10**, otherwise the prosecuting party has failed to evidence federal subject matter jurisdiction, and thereby prosecuted upon Prima Facie evidence known as United States Code; and

Where it is shown that United States Code has been misapplied beyond the Legislative Jurisdiction of Congress, or where the indictment fails on its face within its four corners to charge a violation of law enacted by Congress in the Statutes at Large or in the federal interstate commerce statute. It must be found as a matter of law that the Indictment is void on its face for want of lawful 'subject matter jurisdiction', or evidence that the Petitioner committed an offense against the laws of the United States; and

The question therefore arises as to whether the prosecuting Party and the Court, possessed the lawful authority to either prosecute or entertain the Petitioner's case; and

In **Royer's Inc. v. United States**, 265 F.2d 615, 59-1 (Ca3 Pa 1959),

"Official sources for the United States law is Statute at Large, and United States Code is only prima facie evidence of such laws."

In **Russell v. United States**, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962),

the Court stated:

"Where guilty depends so crucially upon such a specific identification of fact, our cases have unfailingly held that an Indictment must do more than simply repeat the language of the criminal statute."

In **United States v. Pheaster**, 544 F.2d 353 at [5] (9th Cir. 1976), the Court held that:

"Stripped of the allegation concerning Interstate [Commerce] transportation, the alleged...[crime]...might constitute a State offense, but would lack the requisite jurisdictional element of Interstate [Commerce] transportation, necessary to convert the State offense into a Federal offense."

In **United States v. Muniz**, 49 F.3d 36, at 43 (1st Cir. 1995),

"It is crucial to the public confidence in the [confidence] of the courts that judges be seen enforcing the law and obeying it themselves."

In **United States v. Schultz**, 17 F.3d 723 (5th Cir. 1994), the court spoke firmly and unequivocally of the necessity of the government to prove the jurisdictional element, and that, the issue of jurisdiction may be raised during any **stage** of the criminal proceedings, including pot-verdict. The Court held, "[t]his court has continually cautioned the government that its failure to adequately prove the jurisdictional element might one day require the reversal of a bank fraud conviction."

In **United States v. Manner**, 611 F.2d 107 (1980), at 12. The day spoken of in SCHULTZ, **supra.**, came to being. In **United States v. Platenburg**, 657 F.2d 797 (5th Cir. 1981); **United States v. Trevino**, 720 F.2d 395 (1983), where the Court stated, "...lack of sufficient proof [jurisdiction] compels reversal and dismissal of the indictment, and not just remand for a new trial with better evidence. The Fifth Circuit Court of Appeals went to say, "[i]ndeed, we have difficulty

comprehending why the government repeatedly fails to prove this element more carefully since the government's burden is so simple and straightforward, as in the other cases we have discussed, the government treads perilously close to reversal, and may soon find itself crossing the line from sufficiency to insufficiency."

The specific United States Code under which the Petitioner is alleged to have offended [§§841(a)(1), 841(b)(1)(C), and § 846 of Title 21] have been misapplied beyond the Legislative Jurisdiction of the Federal Congress. The language therein or thereunder which could be construed as incorporating or including § 801 of Title 21, or an Interstate Commerce "Nexus." Thus, the sine qua non [Interstate Commerce] must be found or charged independently, or as a prerequisite to the legitimate charging of the subsequent statutory provision(s), a contrary application of such provision(s) would be found to be without force or effect of Congressional authority.

Fortunately, there is a readily available method for discerning which Statute-at-Large, Acts, United States Code, Title, enumerated subsection, Executive Order, Reorganization Plan, or Proclamation, possesses either restricted applicability, or general application within the Legislative Jurisdiction of Congress. This method is by the way of consulting the **Parallel Tables of Authorities and Rules**, which begins at page 741 of the 2003 Index Volume of the Code of Federal Regulations. It's authority is located at 1 C.F.R. § 8.5(a).

The Administrative Procedure Act, located at 5 U.S.C. § 552, et seq., and the Federal Register Act, at 44 U.S.C. § 1505 et seq., provide the means for determining the Lawful application of any given Congressional Act, Statute-at-Large, Executive Order, Reorganization Plan, Code, Title, or enumerated subsection thereof.

In **Hotch v. United States**, 212 F.2d 280, 283 (9th Cir. 1954), the Court stated: "Under our system of law, no act is punishable as a crime unless it is specifically condemned by the Common Law, or by a statutory enactment of the Legislature **(22 C.J.S., Crim.LAw, § 17)**. Therefore, the Administrative Procedure Act and the Federal Register Act must be read as a part of every Congressional delegation of authority unless specifically excepted. **Those acts require publication, irrespective of actual notice, as a prerequisite to the "issuance" of a regulation making certain acts criminal.** If certain acts have not been made crimes by duly enacted law, the knowledge of their contemplated administrative proscription can not subject the uniformed person to criminal prosecution. **While ignorance of the law is no defense, it is conversely true that a law which has not been duly enacted into positive law, is not a law of general applicability and therefore, a person who does not comply with its provisions cannot be guilty of any crime.**" [Emphasis Added]

In **Wei v. Robinson**, 246 F.2d 739 (7th Cir. 1957), cert.den. 78 S.Ct. 144, 355 U.S. 879, the Supreme Court stated, "Contents of the Federal Register and the Code of Federal Regulations are prima facie evidence of the original text and are required to be judicially noticed." In **Wolfson v. United States**, 492 F.2d 1386, 204 Ct.Cl. 83 (1974), "When regulations are published in the federal Register, they give legal notice of their contents to all who may be affected thereby." IN **Shafer v. United States**, 229 F.2d 124, cert.den., 76 S.Ct. 78, 351 U.S. 931, the Court stated, "The publication of a document in the Federal Register creates a rebuttable presumption of validity."

In **Northern States Power Co., v. Rual Electrification Administration**, 248 F.Supp. 616 (1965), the Court stated, "Rules by government agency, of general applicability and published in accordance with the Federal Register Act, have force and effect of Statute law, and are binding on those publishing them as well as [those who are subject to such, by way of some contractual agreement **"Clearfield Trust Doctrine"**]...until such time as they be repealed or modified. Federal Regulation Act, §1, et seq., and 44 U.S.C. §301, et seq.

In **United States v. Mersky**, 361 U.S. 431, 438 (1960), The Supreme Court stated:

"Once promulgated, these regulations called for by the statute itself have

the force of law, and violation thereof incur criminal prosecutions just as if all the details have been incorporated into the congressional language. **The result is that neither the Statute nor the Regulation are complete without the other, and only together do they have any force in effect**: therefore, the construction of one necessarily involves the construction of the other, and in the context of criminal prosecutions, the rule of strict construction must be applied in the interpretation of an Administrative Regulation to which penal consequences attach under the statute authorizing the promulgation of the regulation, as well as the construction of the statute."

In **United States v. Reinis**, 794 F.2d 506 (9th Cir. 1986), the Court stated, "An individual cannot be prosecuted for violating the "Act" unless he [also] violates an implementing regulation." **United States v. Two Hundred Thousand Dollars**, 590 F.Supp. 846 (S.D.Fla. 1984), and 1 C.F.R. § 1, **"All regulations must be published in the Federal Register to have general applicability and legal effect."** Regulations published by the Secretary at 26 C.F.R. §§601-702(ii), acknowledge the effect of failure to publish by stating: "Thus for example, any such matter which imposes an obligation and which is not published or incorporated by reference will not adversely change of affect a persons rights."

The Supreme Court stated in **United States v. Welden**, 377 U.S. 95(1964), that under 1 U.S.C. § 204(A), which provides that the United States Code establishes prima facie the laws of the [Corporate] United States, and that when such Titles of the code are enacted into positive law, the text thereof is legal evidence of the law contained therein, the very meaning of 'prima facie' is that the code cannot prevail over the Statutes-at-Large, when the two are inconsistent. If construction of a section of the United States Code, which is shown to have not been enacted into Positive Law, necessary recourse must be had in the original Statute-at-Large themselves and a changed arrangement made by the codifier with

out the approval of the Federal Congress, should be given no weight. **Stephan v. United States,** 319 U.S. 423 (1943); **Best Foods v. United States,** 147 F.Supp. 749, 37 Cust.Ct. 1 (1956); **Peart v. Motor Vessel Bering Explorer,** 373 F.Supp. 927 (1974).

The law provides that when implementing regulations are at variance with the statutory provsion(s) under which they are intended to promulgate, they fail to give proper notice under the Due Process Clause, Federal Constitution and the Fair Notice Doctrine. In the framework of criminal prosecution, unclarity in the statute or a regulation issued thereunder, is enough to resolve doubts in favor of the 'charged party'.

Therefore, as enacted, the bill (H.R. 18583) is Public Law 91-513 (84 Stat. 1236). The bill or/signature cannot be found on any Presidential Order, or other document, is not shown on 84 Stat. 1236, and cannot be found in the National Archives. Therefore, as matter of law, a charge under 21 U.S.C. §§841, 846 is null and void ab initio. Without any penalty provisions, a crime cannot be charged and a defendant cannot be convicted and sentenced. Petitioner's indictment is fatally defective because it charges Petitioner with no legitimate criminal offense. **Nullum crimen, nulla poena sine preavia lege poenali.** (No crime [may be committed], no punishment [may be imposed] without a previous penal law.

**Q.    Issue Four: The Government's Fraud, Unclean Hands, Bad Faith, and Violations of the Principles of Fair Dealing Render the Indictment and Conviction Void.**

Throughout the period when the Department of Justice was indicting, jailing, an convicting Petitioner, the Department of Justice ["the experts in the law"], **knew** that Public Laws 80-772 and 80-773 were never enacted into positive law, were unconstitutional on their face, and were void ab initio. They therefore, **knew** that 18 U.S.C. § 3231 was never enacted into positive law, was unconstitutional on their face, and was void ab initio. They therefore **knew** that Petitioner was not

indicted pursuant to the prior criminal code, 18 U.S.C. § 546 (1940) and that he was not given fair warning related to the statute. They, therefore **knew** that without the district court having jurisdiction pursuant to 18 U.S.C. § 546 (1940), they were indicting a person who was legally innocent as a matter of law.

With respect to the accused right's to information, the prosecutors should be vigilant to see that full disclosure is made at trial of whatever may be in his or her possession, which bears in any material degree on the charge for which the defendant is tried. In the long run it is more important that the government disclose the truth so that justice may be done than that some advantage might accrue to the prosecution toward ensuring a conviction. **U.S. v. Consolidated Laundries Corp.,** 291 F.2d 563 (2nd Cir. 1961); **U.S. v. Zborowski,** 271 F.2d 661 (2nd Cir. 1959). The American Bar Association for the Administration of Criminal Justice provides that, "except as otherwise specified as to protective orders, the prosecuting attorney **must disclose** to defense counsel any material or information within the prosecutor's possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment imposed." **ABA Standards for CRiminalJustice, Discovery and procedure Before Trial : 11-2.1(c).** A plea agreement includes an **implied obligation of good faith and fair dealing. U.S v Jones,** 58 F.3d 688 (D.C. Cir. 1995). The government's obligation to disclose material evidence to the accused, is pertinent not only to the accused's preparation for trial, but also to his or her determination of whether or not to plead guilty. **U.S v Avellano,** 136 F.3d 249 (2nd Cir. (1998).

Clean hands is a legal euphemism which refers to the acceptability, cleanliness, and decency of the claim put forth. It means that a claim tainted with deceit and impurity of motive, which is of decent character, would perhaps receive approval, will unhesitantly be ignored. IT means that a party who seeks

to set the judicial machinery in motion and obtain some equitable remedy. And has violated conscience, good faith or another equitable principle in prior conduct with reference to the subject in issue. The doors of equity will be shut. Notwithstanding, the defendant's conduct has been such, that in the absence of circumstances supporting the application of the maxim, equity might have awarded relief. **Hoehn v. Crews**, 144 F.2d 665. **An order or judgement obtained in violation of Due Process, without jurisdiction, or by fraud is void. Government Financial services v. Peyton Place**, 63 F.3d 767, 772-773 (5th Cir. 1995); **New York Life Insurance Co. v. Brown**, 84 F.3d 137, 143 (5th Cir. 1996). The disputed facts exists that a fraud, plainly designed to corrupt the legitimacy of the truth-seeking process, was perpetrated on the court by the prosecution team in this case. **Hazel-Atlas Glass Co. v. Hartford-Empire Co.**, 322 U.S. 238, 247 (1944). **Fierro v. Johnson**, 197 F.3d 147, 12 (5th Cir 1999); **In re Murchison**, 349 U.S. 133, 136 (1955). "Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge. Since it is that court which is authorized to supervise the conduct of the members of its bar." **Gas-A-Tron v. Union**, 34 F.2d 1322 (9th Cir. 1976).

Any doubt as to the government's official position and the fraud, is further confirmed in: **Memorandum for Janet Reno**, **Attorney General**, November 12, 1996, pg.1: "You have asked this office to analyze the legal effectiveness of a congressional subpoena issued **after a sine die adjournment of Congress**. In a **1982 opinion**, this Office concluded that a congressional subpoena issued during a session of Congress, lacks present force and affect after the adjournment sine die of Congress. **Continuing Effect of A Congressional Subpoena Following the Adjournment of Congress**, 6 Op. O.L.C. 744 (1982). **According to that opinion, the lapse, in legal effectiveness results from <u>the same factors</u> that produce, at the**

same time, the <u>death of all pending legislation not enacted...</u>"

Any question as to the government's and Courts knowledge of the fact that the 80th Congress adjourned sine die, thereby killing all legislation, can also be found in the **107th Congress House Rules Manual**, which traces it's roots back to **Blackstone's Commnmentaries.** See **pg.1, Modes of Separation**: "Prorogation or dissolution, constitutes there, what is called a session, provided some act is passed. In this case, all matters depending before them are discontinued, and at their next meeting are to be taken up de novo, if taken up at all. **1 Blackst...** 186..."If convened by the President's proclamation, this must begin anew session , and of course, determine the preceding one to have been a session."

The government knew at the time it was prosecuting Petitioner, and afterwards, that it was defrauding the court. Acting in bad faith, in unfair dealing, and in violations of the Unclean Hands Doctrine. The Petitioner's indictment and conviction should be dismissed because of the fraud perpetrated by the government. [41]

R.    **Conclusion**

Petitioner has shown ipso facto, by the record itself. supra. That the statutory subsections under which he has been arrested, charged and convicted, are in fact those provisions which Congress never enacted into law, viz. **84 Stat 1236, H.R. 18583, Public Law 91-513.** See **18 U.S.C. 4001** and **Table of Authorities.**

The federal courts only have jurisdiction in matters involving and "Offense against the United States," and nothing can be an offense against the United States unless it is made so by Congressional Act pursuant to the U.S. Constitution.

---

[41]  See, CRS Report to Congress, March 30, 2001; The Pocket Veto, It's Current Status; C-Span Congressional Glossary: Definition of Pocket Veto; U.S. Senate: Definition of Adjournment Sine Die.

## RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Petitioner respectfully prays this Honorable Court:

A. Find as a matter of law, that the pleadings set forth, supra. Are true, correct and complete, to the best of Petitioner's current knowledge and belief;

B. Stay all trial proceedings pending final resolution of this petition;

C. Declare Petitoner's judgment, contrary to the law and a direct violation of Petitioner's Constitutional Rights;

D. Declare Petitioner's indictment and conviction, void as a matter of law;

E. Declare Public Law's 80-722 and 80-773 unconstitutional;

F. Declare 18 U.S.C. 3231, applicable only to banking cases;

G. Declare 28 U.S.C. §§2255 and 2241, applicable only to the District of Columbia, where same have been shown not to possess promulgating authorities in the Federal Register;

H. Declare Title 21 U.S.C. §§841 and 846 null and void ab initio;

I. Issue a Writ of Habeas Corpus delivered to Respondent, U.S. Department of Justice, to vacate Petitioner's judgment and conviction, against and legal sentence it is authorized to impose. Ordering Petitioner actually innocent of the present judgment imposed, as contrary to law. And a violation of Petitioner's Constitutional Rights, and mandate Petitioner's immediate release from his fettered restraints on his liberty; and,

J. Grant such further relief as this Court deems just and proper.


Dated this 4 day of February , 2008.

Respectfully submitted:

Gustavo Luna/pro-se

68

**JURAT**

State of Louisiana    )
                    )   ss:
Parish of Allen      )

     Before me a Notary Public, on this day personally appeared Gustavo Luna, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the facts and statements therein contained are true and correct.

Witness my hand and seal this _4_ day of ___February___, 2008.

## TABLE OF CONTENTS

1. PETITION FOR COMMON LAW WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY

2. APPLICATION FOR COMMON LAW WRIT OF HABEAS CORPUS

3. MEMORANDUM OF LAW WITH INCORPORATED POINTS AND AUTHORITIES

4. JUDICIAL NOTICE-RULE 201(d)

5. ADMINISTRATIVE AND QUASI-JUDICIAL NOTICE

6. EXHIBIT "A"   Charging Instrument and/or Judgment & Sentence

7. EXHIBIT "B"   C.F.R. '98 pages 736, 738 & 739

8. EXHIBIT "C"   Attorney General Letter(s), date May 1 & 20, 1997

9. EXHIBIT "D"   F.R.C.P. 32 Evidentiary Hearing [not submitted]

10. EXHIBIT "E"   United States of America Congressional Record Volume 94-Part 8 July 26, 1948 to December 31, 1948, pages 9353, 869, 683 and 672

G
08-235
RWR

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Gustavo Luna

*Togoshio*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

*Pro Se* (M)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

Alberto Gonzales

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND

Case: 1:08-cv-00235
Assigned To : Roberts, Richard W.
Assign. Date : 2/12/2008
Description: Habeas Corpus/2255

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

Ⓧ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency
Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**☐ D. Temporary Restraining
Order/Preliminary
Injunction**

**Any nature of suit from any category may
be selected for this category of case
assignment.**

*****(If Antitrust, then A governs)***

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien
Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant

☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
Administrative Agency Review
or Privacy Act)

| ■G. *Habeas Corpus/ 2255* | □H. *Employment Discrimination* | □I. *FOIA/PRIVACY ACT* | □J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
| □K. *Labor/ERISA (non-employment)* | □L. *Other Civil Rights (non-employment)* | □M. *Contract* | □N. *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights<br>Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-<br>Employment<br>□ 446 Americans w/Disabilities-<br>Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>□ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

(●) 1 Original
Proceeding
□ 2 Removed
from State
Court
□ 3 Remanded from
Appellate Court
□ 4 Reinstated
or Reopened
□ 5 Transferred from
another district
(specify)
□ Multi district
Litigation
□ 7 Appeal to
District Judge
from Mag.
Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*28 USC 2241 - Habeas Corpus*

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS
□   ACTION UNDER F.R.C.P. 23
**DEMAND $**   Check YES only if demanded in complaint
**JURY DEMAND:** □ YES   (●) NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   □ NO   If yes, please complete related case form.

DATE *2-2-08*   SIGNATURE OF ATTORNEY OF RECORD   *nco*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd